**HOLTVILLE ALFALFA MILLS, Inc.,**
a corporation, Appellant,

v.

**R. R. WYATT,** Felipe Alday et al.,
Appellees.

**R. R. WYATT,** Felipe Alday et al.,
Appellants,

v.

**HOLTVILLE ALFALFA MILLS, Inc.,**
a corporation, Appellee.

No. 13723.

United States Court of Appeals
Ninth Circuit.

Aug. 31, 1955.

Moss, Lyon & Dunn, Los Angeles, Cal., James E. Marable, El Centro, Cal., for appellants.

James M. Hall, Los Angeles, Cal., William E. MacFaden, Redondo Beach, Patrick James Kirby, Los Angeles, Cal., for appellee.

Stuart Rothman, Solicitor, Bessie Margolin, Chief of Appellate Section, Joseph M. Stone, Atty., Dept. of Labor, Washington, D. C., Kenneth C. Robertson, Regional Atty., Dept. of Labor, San Francisco, Cal., amici curiae.

Before STEPHENS and FEE, Circuit Judges, and CLARK, District Judge.

JAMES ALGER FEE, Circuit Judge.

Certain employees of Holtville Alfalfa Mills brought action under the Fair Labor Standards Act for alleged overtime wages on account of work done for defendant. The defense is that the labor performed by each of these employees was agricultural in character and therefore plaintiffs were excepted from the provisions applying to industrial workers generally or fell under certain classifications relating to processing of agricultural products.

The record clearly shows defendant is engaged in interstate commerce. Defendant conducts a year-round processing operation, for seven months approximately on a basis of twenty-four hours a day and the balance twelve hours a day, but in each instance seven days a week, in dehydrating alfalfa already chopped and pulverizing and pressing into blocks the resultant product for sale and shipment in interstate commerce. The office, plant and equipment of defendant are located somewhat more than a mile beyond the city limits of Holtville, California, and not on a farm. Defendant owns no farms and operates none. It purchases from farmers growing crops of alfalfa within a radius of one-half to eighteen miles of its plant. Defendant at the proper stage harvests the crop upon the various farms through its employees, including plaintiffs, by an integral operation wherein the alfalfa is mowed, raked into windrows, picked up and chopped and loaded into a truck for immediate transportation to the mills. There it is processed and placed on the market.

The District Judge held (1) the field workers were "employed in agriculture," (2) the maintenance man for the field who devoted his time almost exclusively to this work fell within the rule that, if any part of the time during a work week is devoted to industrial labor, the employee must be paid overtime on the whole week, (3) the truck drivers were held not to be employed in agriculture and not to fall within the specific exceptions, (4) the mill employees were held to be entitled to overtime wages, (5) the change of the method of bookkeeping on March 24, 1950, whereby some employees apparently received overtime, was not effective since the weekly remuneration remained approximately the same, (6) liquidated damages were not allowed, with minor exceptions, since the court found the employer acted in good faith, (7) interest was allowed upon overtime compensation found to be due, and (8) attorney fees were allowed.

Findings were entered and judgment granted. D.C., 106 F.Supp. 624. Both sides have appealed.

This case will be remanded to the trial court for the assessment of attorney fees. There has been a petition filed here for the allowance of attorney fees upon appeal. It is just that such fees should be granted because of the extra burden thrown upon the lawyers for the employees and the delay and inconvenience caused when, as here, the findings of the trial court are for the more part affirmed. But this Court has not the background for fixing such reasonable allowances with relation to the

amounts already granted by the trial judge. The latter can equitably adjust these allowances, taking evidence if he deems necessary.

■ The award of interest upon any sums found to be due for withheld compensation is affirmed.[1] Notwithstanding doubts which may have been entertained upon this subject, it seems clear now the rationale of the judgment for overtime is that an obligation computable mathematically exists as soon as the wages are not paid on the statutory scale. Good faith of the employer does not affect the situation as to sums allowed for overtime. Where the court, as in a few instances here, has found punitive damages because of a lack of showing of good faith, then lines of demarcation must be drawn. It must be stated whether the punitive damages are thereby assessed covering the interest due on the sum allowed as compensation or no. No interest should be allowed on sums in part or whole assessed as liquidation damages or dependent on a finding of good faith.[2] Clarification of the findings in this respect may be made upon remand.

Congress excluded any employee engaged in agriculture which is defined to include farming in all its branches, which comprises harvesting of any agricultural commodity.

The Supreme Court of the United States has recently said:

"From the very beginning of the legislative consideration of the Act, a comprehensive exemption of agricultural labor was a primary consideration of the Congress. Nevertheless, before its final language developed, the agricultural exemption ran the gamut of extensive debates and amendments, each of the latter invariably broadening its scope. Exempting 'any person employed in agriculture,' its first comprehensive definition declared 'farming in all its branches' to be exempt, including 'any practices *ordinarily* performed by a farmer as an incident to such farming operations.' S. 2475, Calendar No. 905, 75th Cong., 1st Sess. 51. Although this language was described by those in charge of the bill in the Senate as 'perhaps, the most comprehensive definition of agriculture which has been included in any one legislative proposal,' 81 Cong.Rec. 7648, its coverage was broadened until it became coterminous with the sum of those activities necessary in the cultivation of crops, their harvesting, and their 'preparation for market, delivery to storage or to market or to carriers for transportation to market.' " Maneja v. Waialua Agricultural Company, Limited, 349 U.S. 254, 260, 75 S.Ct. 719, 723.

Since the discussion of whether the employee engaged in agriculture under the provisions of the statute is critical, consideration will be given to the solitary repairman and then to three classes of employees: field workers, truck drivers and mill workers.

■ In the consideration of the maintenance man, the trial court discussed the situation as though a rule of administrative convenience could be used to control the fact that this employee was employed in agriculture. As far as can be understood from what was said, this employee spent the great bulk of his time

---

1. In the trial court's opinion it was held that "no interest will be granted to those plaintiffs successful in this action", Wyatt v. Holtville Alfalfa Mills, D.C., 103 F.Supp. 624, 633. The opinion is dated July 5, 1952. However, in its "Findings of Fact and Conclusions of Law and Judgment as Amended after Motion for New Trial * * *," filed January 8, 1953, the trial court awarded " * * *

seven per cent (7%) simple interest on the damages payable * * *."

2. "To allow an employee to recover the basic statutory wage *and* liquidated damages, with interest, would have the effect of giving an employee double compensation." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 715, 65 S.Ct. 895, 906, 89 L. Ed. 1296.

repairing the machines used in the harvesting operation in the fields where these were being so used. He also spent a minor part of his time making repairs to these same machines at the mill grounds. These circumstances are sufficient to characterize him as a worker employed in agriculture. If the finding is to the contrary, it is clearly erroneous.[3] The mere fact that one employed entirely in farming otherwise opens the factory doors and gets out his equipment should not take him outside the policy declared by Congress. Definitive findings should be made and an appropriate judgment entered as to this employee.

■ The court found the employees engaged in mowing, raking and chopping the alfalfa and loading it on trucks, parts of a continuous, synchronized, integral operation which began with the crop growing in the field and ended when the product appeared as chopped alfalfa on board a truck.

The trial court has an excellent statement of the matter in the findings:

"These employees are engaged in mowing, raking, chopping and removing by truck the alfalfa from the fields to which they are assigned by defendant. The field implements used include mowers, rakes and choppers and are all tractor-powered. Approximately three mowers, three rakes and two choppers operate with the truckers as a field unit. These field employees are rarely, if ever, employed during the same work-week to operate more than one of the implements mentioned.

"The entire mowing, raking, chopping and loading operations are synchronized. In a typical operation, the mowers, rakes and choppers, each drawn by a tractor, arrive at the field together. The mowers cut the crop. They are followed by rakes which collect and form the cut alfalfa into windrows. The rakes,

in turn, are followed by the choppers, which as part of this synchronized operation, pick up the alfalfa from the windrows, chop it and blow it into the truck bed. The chopper has an individual motor to drive the lawnmower-like blades and operate the blowing device which blows the chopped alfalfa through a long, funnel-like attachment directly into the truck bed. The loading of the truck is automatic from the chopper to the truck. When the truck is fully loaded, it proceeds to defendant's premises, its place being taken by another truck."

There cannot be much doubt but that this entire process is harvesting. The trial court did not expressly so find, however, but did find the employees engaged in the process were employed in agriculture, which is, of course, sufficient. There can be no distinction drawn between a harvesting operation and an activity incident thereto, since Congress, as above noted, included both in the broad definition of "agriculture." The failure of the trial court to specify under which branch of the definition the harvesting activities here fall is without importance. The briefs which attempt to make a point of this failure emphasize a distinction without a difference.

■ Some difficulty arises with regard to the truck drivers inasmuch as they are employed in the integrated harvesting operation which has been above described. The trial court said with reference to them:

"The work of these employees, while on the alfalfa fields, has been described. Upon arrival at the mill with a full load, the drivers back up their truck to a self-feeder or leave it in the yard for others to handle. They then drive their trucks back to the fields as soon as empty vehicles are available."

It is obvious that the truck driver does not do any handling of the product at

---

3. "Employees who repair the mechanical implements used in farming are also included." Maneja v. Waialua Agricultural Company, Limited, 349 U.S. 263, 75 S. Ct. 725.

the mill, but simply returns to the field with another truck. If the hay were left to dry in the field, that operation would be a part of the harvesting. If the hay were subsequently picked up and baled in the field, it can be assumed that such an activity would be either part of the harvesting or part of preparation for market. If the loose hay were hauled to a stack on or off the farm, that would be transportation of a crop to storage. It may also be said that baled hay could be hauled to a warehouse and that would probably be found to be transportation to storage, whether on or off the farm. The theory upon which the trial court held that the truck drivers were not engaged in agriculture is not entirely clear. There is one expression of the court which indicated that it was found that chopped alfalfa is not an agricultural product in its raw or natural state. This is supported by the findings that alfalfa, when chopped, is subject to spoilage unless immediately dehydrated. If this be a finding that the nature of the alfalfa has been so changed that it has actually gone through the first processing as a part of the harvesting, then it might be possible also to hold that the activity of the trucker in this connection is an adjunct of the processing rather than the farming. This is a question of fact which a trial judge acquainted with the customs of the locality can settle authoritatively. The findings should be express and definite.

Transportation of crops so that spoilage can be prevented is usually considered part of harvesting. The operation was one which was integrated with the harvesting and occurred "on a farm." Part of the journey to the mill took place off the farm and, of course, was not performed by a farmer. It must be remembered, however, that the statute includes as agriculture "preparation for market, delivery to storage or to market or to carriers for transportation to market." 29 U.S.C.A. § 203.

The court should explicitly find as a fact whether the transportation from the field was or was not part of the harvesting or an activity closely enough connected therewith to warrant the finding that the truck driver was employed in agriculture or, on the other hand, that the alfalfa chopped as a part of the harvesting was sufficiently changed in character by the time it reached the truck so that it was no longer an "agricultural" commodity in its "raw or natural state." There are some facts in the record which might tend to support a finding of first processing of the alfalfa which had been chopped and by this process had been changed from its raw or natural state. "Chopped alfalfa will ferment and spoil if not dehydrated at once." Therefore, as soon as this processing is done in the field as a part of the harvest, the product must immediately be taken to the mill for further processing. Although, as stated above, it appears that the chopping and picking up in trucks unquestionably constituted harvesting, and it seems equally clear that the trial court might possibly have found that the chopped alfalfa was not an agricultural product in its raw or natural state. But the trial court failed to make any finding on this subject.

■ There is no doubt in our minds that the mill and the adjuncts thereof are strictly an industrial operation of the type which Congress intended to control by the Fair Labor Standards Act. Its employees who work in the mill are in competition with other industrial employees. This Court clearly notes the distinction between the agricultural worker and the employee in industry. The purpose of Congress in this regard was clearly stated. Every intendment then is to be indulged toward keeping these employees upon the same wage and hour scale as other industrial employees.

Therefore, only the exemptions relating to processing of such products are to be applied.

The trial judge considered three clauses of exemption and held each inapplicable to the situation of the mill workers. These were the exemptions under Sections 13(a) (10), 7(b) (3) and

7(c) of the Fair Labor Standards Act.[4] The holdings should be based on explicit findings of fact which the trial judge only is in a position to make. Once made, such findings of fact relating to the processing exemption are almost impregnable.

■ The trial court in considering the first and third exemption above noted quite correctly rejected the formalistic test set up in regulations as to the location of the mill in the "area of production."

■ Whatever be the determination as to truckers, there is no doubt, once transportation ceases, these products are being prepared "for market." At that point these products crossed the meander line of the stream of commerce. Furthermore, the term "handling" cannot be brushed aside by saying, as the trial judge did, that employees who were using machinery to pick up the product and put it through the process of dehydration and compressing into marketable form were not handling the material within the meaning of the statute. The chopped alfalfa was not unloaded, according to the facts found by the trial court, by the truckers but by the mill hands. Whether the process, at that time and thereafter, was entirely by machinery or in part manual, it was plainly "handling." All employees at the mill, under the facts now before us, conclusively were handling the material for market. Unquestionably these employers were engaged in "drying" and "preparing" the material.

Therefore, in determining whether this processing exemption is applicable, the trial judge must find explicitly that "chopped alfalfa" is not an "agricultural" commodity which was prepared "for market" while still in its "raw or natural" state.

■ The trial court found as a fact that the operation of mills was not seasonal. The continuous operation of the plant every month of the year makes this finding a verity. As a result, the processing employees did not fall within Section 7(c) of the Act, 29 U.S.C.A. § 207(c).

■ Since the employer was found not to have paid the wages for overtime required as a prerequisite to exclusion, the employees did not fall within the limited provisions of Section 7(b) of the Act, 29 U.S.C.A. § 207(b) (3).

The cause is remanded to the trial court for further findings and judgment in accordance therewith.

4. (1) 29 U.S.C.A. § 213(a) (10), which states that "sections 206 and 207 of this title shall not apply with respect to * * * (10) any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing * * * drying, preparing in their raw or natural state * *. * of agricultural or horticultural commodities for market * *."
(2) 29 U.S.C.A. § 207(b) (3), which states that "no employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of that specified in such subsection without paying the compensation for overtime * * * if such employee is so employed—* * * "(3) for a period or periods of not more than fourteen workweeks * * * in an industry found by the Administrator to be of a seasonal nature, and if such employee receives compensation for employment in excess of twelve hours in any workday, or for employment in excess of fifty-six hours in any workweek, * * * at a rate not less than one and one-half times the regular rate at which he is employed."
(3) 29 U.S.C.A. § 207(c), which applies to "an employer engaged in * * * first processing, within the area of production (as defined by the Administrator), of any agricultural or horticultural commodity during seasonal operations * * *" and states that the "provisions of subsection (a) of this title, during a period or periods of not more than fourteen workweeks * * * shall not apply * * *."