Merrimack,
No. 5454.

MADELEINE Y. MURRAY & *a.*

*v.*

BOSTON & MAINE RAILROAD.

Argued June 7, 1966.
Decided September 30, 1966.

*Upton, Sanders & Upton (Mr. Robert W. Upton* orally ), for the plaintiffs.

*Sheehan, Phinney, Bass & Green* and *Alan L. Reische (Mr. Reische* orally ), for the defendant.

BLANDIN, J. Mrs. Murray, an active woman sixty-nine years of age and in excellent health, claims that she fell from the bottom step of a car on the defendant's train while attempting to board it at Claremont Junction, due as she says, to the fact that the defendant's trainman negligently failed to assist her. She testified that she asked the trainman to get her bags, which were just outside the station door, and upon his brusquely telling her to get aboard, she observed that " this looks like a very high step [but] I will try it. " Then, supposing that he would be nearby to help her, she made the attempt, taking hold of the sloping hand holds which ran parallel to the steps. She did not use the vertical rails which were nearer to her. Her hand slipped on the smooth hand holds and she slid back into a jackknife position. She called out that she was falling, but no one came to aid her and she did fall, landing on the small of her back, while her head struck a rail of the tracks.

The defendant's trainman denies that he gave her any per-emptory orders to board the train or that she said it was a high step or anything of that nature. He testified that all that passed between them was her request that he get her bags, and upon this he immediately walked away to do so. He stooped to pick them up with his back to Mrs. Murray, and upon straightening up and turning around, he saw her sitting on the platform. He had heard no cry for help and says that she had indicated to him that she would not try to get aboard until after he returned with her luggage.

Meanwhile, the conductor, as soon as he got off the car, had gone into the station to register his train, as was his duty. He came out after she had fallen. One of Mrs. Murray's two com-panions, who was standing near her on the platform, testified that when she looked at the steps it never occurred to her that the plaintiff would need any help in ascending them. There was other evidence, some of which was conflicting, which it seems unnec-essary to detail, although parts of it will be referred to later.

The plaintiffs excepted to the Court's failure to grant their request No. 3, which reads as follows:

" The Boston & Maine Railroad, as a common carrier of passengers for hire, was bound to exercise such care, skill and diligence in transporting passengers as would a reasonably pru-dent man under like circumstances. "

Upon this subject, the Court charged as follows:

" Now, the defendant in this case is a corporation, a railroad corporation, and a common carrier of passengers for hire, the Boston & Maine Railroad . . . Now, of course, the fact that a person is a passenger for hire in a train, as the plaintiff was in this case, does not make the railroad an insurer or a guardian of that person against any injury that they may sustain. The rail-road does not insure its passengers against all injury happening to them while they are traveling upon a train. A person is entitled to recover, however, as they would be in any other situation, if they are injured by reason of the negligence of the defendant railroad, if they themselves are free of negligence at the time of the occurrence.

" The claim of the plaintiff here is that the defendant railroad was negligent in that they failed to assist the plaintiff, Mrs. Murray, in boarding the train at the station on the day in ques-tion in May, and that as a result of that failure the plaintiff fell and was injured while boarding the train. Now, it is for you to consider all of the evidence on this particular issue, determining the conduct of all the parties, that is, the defendant's agents and the plaintiff, in order to determine whether or not, first, there was an apparent necessity for assistance to the plaintiff in boarding the train, because I have to instruct you that the defendant rail-road is under no duty to furnish assistance to a passenger in boarding a train unless there is an apparent necessity to do so. It is for you to consider all the circumstances surrounding this case to determine that. That means you will consider this situation with reference to the entrance to the train, the condition of the train itself, the condition of the various banisters or railings which people would use to assist themselves in boarding the train, the distance of the steps from the platform, the actual actions of the parties at the time, as to whether or not there was a request for assistance, the appearance of the plaintiff as to her age and as to whether it would be apparent to a person that she would need

assistance, and all of the other factors, to determine whether or not as far as the defendant's agents were concerned there existed an apparent necessity for assistance to Mrs. Murray in boarding this train.

" If you find by a preponderance of the evidence that there was such an apparent necessity, then you will consider whether or not they negligently failed to assist her to mount the train at the time the accident occurred. If you find that they did fail to assist her, and that there was an apparent necessity, and that as a result of their negligent failure to assist her under all the circumstances, and of course this includes whether or not they were available to assist her at the time she should have been assisted, under all those circumstances if you find the defendant railroad was negligent by its agents' acts, you will then have found upon that issue for the plaintiff. . . .

" Now, gentlemen, there has been evidence introduced of certain rules of the railroad and customs of the employees of the railroad in situations of this nature. I instruct you that you may consider and properly consider whether or not the railroad employees complied with the rules of the railroad and whether or not they complied with their customs that they had established, as evidence of whether or not the defendant railroad was negligent in this particular case.

" You will understand, of course, that while the rules of the defendant railroad and the customs which they have observed over the years are evidence as to the methods by which the railroad operated, it may not properly be considered entirely as a substitute for your own good judgment as to whether or not the railroad under all the circumstances was negligent or not negligent. For that, of course, you must still apply the familiar rule of whether or not they acted under all the circumstances as a reasonably prudent person would have acted. This involves our old friend, the reasonably prudent person, that is, the person not necessarily acting the way you think you would act, but a person who would act not as the most negligent person and not as the most careful person, but the way you yourselves feel an average, ordinary, prudent person under the circumstances of this defendant's agents would have found that they would or should have acted. "

The essence of the plaintiffs' request No. 3 is that the defendant is a common carrier and bound to exercise such care toward its

passengers " as would a reasonably prudent man under like circumstances. " The Court had told the jury that the defendant was a railroad corporation carrying passengers for hire on a train, which was a fact obvious and stressed throughout the trial. He also charged that they should apply the " familiar rule " of judging the defendant's conduct by " our old friend, the reasonably prudent person " and that the railroad through its agents was bound to " act under all the circumstances as a reasonably prudent person should have acted. "

It was not necessary to use the exact words of the request. *Mutterperl* v. *Lake Spofford Hotel*, 106 N. H. 538. We believe that, taking the charge as a whole ( *Cyr* v. *Sanborn*, 101 N. H. 245, 250 ), the law was stated correctly and that the jury understood it. This is sufficient. *M A C Finance Plan* v. *Stone*, 106 N. H. 517.

However, the plaintiffs urge that no apparent necessity to help Mrs. Murray arose until she tried to board the train and that then there was no one available to assist her. They argue from this that under the Court's instructions the jury had " little or no choice but to return a verdict for the defendant. " We do not agree. The charge was broad and repeatedly emphasized to the jury that they must consider all the surrounding circumstances in deciding whether an apparent necessity for aiding the plaintiff existed. This clearly referred, among other factors, to the plaintiff's apparent age, to her testimony that she looked upon the steps with apprehension, to what she said to the trainman, and to her expectation that he would be on hand to help her if necessary. This evidence, which the Court told the jury to consider, if believed would have warranted a finding that an apparent necessity existed for aiding her before she tried to mount the steps. They were not constrained under the charge to find a verdict for the defendant. On the contrary, the instruction correctly stated the law and properly left it to the jury to decide in all the circumstances whether they believed the plaintiff's evidence that there was an apparent necessity for assisting her before she attempted to get on the train. Had they so believed, they could have returned a verdict in her favor. It follows from what we have said that the plaintiffs' exceptions to the refusal to grant their third request are overruled.

The plaintiffs' request No. 4 is as follows:

" The defendant enacted or adopted and printed in its book

entitled 'Rules for the Government of the Operating Department', a rule as follows: '815 ( Conductors ) must see that necessary assistance is rendered from the station platform to passengers when boarding or leaving the train.' You may consider the enactment of this rule as an admission by the defendant that some rule was necessary for the safety of its passengers when boarding or leaving a train."

The earlier cases might appear to create some confusion as to just what the law is here in matters relative to such rules. See *Wallace* v. *Railroad*, 72 N. H. 504, 513; *Minot* v. *Railroad*, 73 N. H. 317; *Topore* v. *Railroad*, 78 N. H. 536; *Derosier* v. *Company*, 81 N. H. 451; *Smith* v. *Railroad*, 87 N. H. 246, 261. However, upon a careful reading, these opinions are not necessarily inconsistent with *Descoteau* v. *Boston & Maine R. R.*, 101 N. H. 271, 274. There our court said: "Promulgation of the rule . . . was *evidence* of the reasonable necessity for the rule . . . and evidence of habitual disregard of the rule warranted a finding of the defendant's knowledge of the practice and of its negligence in the performance of its duty to enforce the rule." *Ib.*, 274. ( Emphasis supplied ). See also, *Wallace* v. *Railroad*, 72 N. H. 504, 513. We believe that the *Descoteau* case states our law correctly and succinctly. The thought expressed in the *Wallace* case, *supra*, that the violation of a rule " would be evidence of negligence, " ( *Ib.*, 513 ) is the law. See also, 2 Wigmore, Evidence ( 3d *ed.* ) *s.* 282, *pp.* 131 - 132.

The Judge instructed the jury in substance that they might consider violation of a rule as evidence of negligence in this particular case. It added that mere violation in and of itself would not conclusively prove the defendant negligent, but that the jury should use their judgment and apply the familiar standard of the reasonable man to determine in all the circum- stances whether the defendant was negligent. This was proper and in accordance with the *Descoteau* opinion.

The form in which this request was presented was misleading. It sought to convey to the jury the thought that the railroad must see that necessary assistance be rendered without reference to whether the defendant is actually aware that the assistance is necessary. In its context with requests 3 and 5, which will be hereinafter discussed, it would have led the jury to believe in this case that the defendant admitted negligence merely because

necessary assistance was not forthcoming, even though it did not know that any help was needed. Such is not our law. *Beaudet* v. *Railroad*, 101 N. H. 4; *Ingerson* v. *Railway*, 79 N. H. 154, 158. The Court's charge as given, relating to the point raised by this request, was proper, and the plaintiffs' exceptions are overruled.

Plaintiffs' request No. 5 is that "It appears that the conductor and trainman did not assist Mrs. Murray in boarding the train. If you find such assistance was reasonably required, then the rule was violated and if such violation caused or contributed to cause injury to Mrs. Murray, you may find the defendant guilty of negligence." This request again ignores the vital factor of the necessity that the defendant be actually aware that the plaintiff Madelcine needed assistance (*Ingerson* v. *Railway*, 79 N. H. 154, 158), and the Court rightly refused to give it as contrary to the law in the *Beaudet* case, *supra*. The plaintiffs' exceptions therefore cannot prevail.

Plaintiffs' request No. 6 asked the Court to charge the jury that "If the defendant failed to exercise reasonable care for the safety of Mrs. Murray and if such failure caused or contributed to cause injury to her, you will find the defendant guilty of negligence." The Court did instruct the jury that the plaintiffs could recover "as they could in any other situation, if they are injured by reason of the negligence of the defendant railroad . . . " and also if the defendant negligently failed to assist the plaintiff and as a result she was injured, she could recover. In the circumstances, we believe this adequately satisfied the thrust of the plaintiffs' request. It is not necessary that the precise wording of their request be used (*Mutterperl* v. *Lake Spofford Hotel*, 106 N. H. 538), and the plaintiffs' exceptions to the failure to grant the sixth request are overruled.

Request No. 10 asked the Court to charge the jury that "The plaintiff, Mrs. Murray, upon being told by either the conductor or trainman to board the train, had the right to rely upon them to give such assistance as might be reasonably necessary unless she knew, or ought reasonably to have known, that neither of them was where he could give such assistance." This request stresses a selected portion of disputed evidence and might well have been denied upon this ground. *Lynch* v. *Sprague*, 95 N. H. 485, 490; *O'Brien* v. *Public Service Company*, 95 N. H. 79, 82;

*Descoteau* v. *Railroad*, 101 N. H. 271, 277. Furthermore, it would have been misleading to the jury in that it again ignored the question of the trainman's knowledge that Mrs. Murray required help. *Beaudet* v. *Railroad, supra.* The plaintiffs' exceptions are accordingly overruled.

After the jury had retired, they sent a request, signed by the foreman, to the Court: "We would like a clarification of causal negligence. This is important to us. " Upon receiving this, the Court contacted plaintiffs' attorney by telephone "and discussed the question with him, telling him that I proposed to write presently an answer to the question, defining causal negligence. " Plaintiffs' counsel then inquired of the Court if the latter desired his presence, to which the Court replied that counsel need not come unless he wished to do so. Upon this, counsel told the Court to give the instruction, provided he "preserved" counsel's rights. When the Court inquired what he meant by this, he was told the "right to take exception to [the Court's] action later. " The Court said that he would preserve such rights as plaintiffs' attorney might have to the instruction "under the circumstances. " Plaintiffs' counsel offered no objections to the Court's stated intention of giving additional instructions and no suggestion as to their phraseology. The instructions were as follows: "If you find that the defendants negligently failed to assist the plaintiff in boarding the train, you then come to the question of causation, and that involves your determination as to whether or not such negligent failure caused or contributed to cause the accident. These two findings together constitute a finding of causal negligence. " The language of the Court plainly and simply conveyed to the jury that for a finding of causal negligence they must determine that the defendant acted negligently and that its negligence caused or contributed to cause the accident. This states our elementary rule, and what we believe to be unquestionably the majority view, in unmistakable terms. *White* v. *Schnoebelen*, 91 N. H. 273, 275; Restatement ( Second ), Torts, *s.* 432, *comment* b.

We are unable to accept the plaintiffs' argument that the instructions required two causal findings of negligence or that they were erroneous or prejudicial in any manner. It does not follow, as the plaintiffs argue, that they were entitled to a verdict upon the mere showing that the defendant negligently failed to act. It is fundamental that either a negligent act or a negligent failure to act must be causal before there can be recovery. *White* v.

*Schnoebelen, supra; Collette* v. *Railroad,* 83 N. H. 210, 213; *Deschenes* v. *Railroad,* 69 N. H. 285, 288. We believe the instruction was correct and the plaintiffs therefore take nothing by these exceptions.

A final question arises because of the plaintiffs' claim that the cross-examination of Admiral Murray, which disclosed that he was receiving the retirement pay of a vice admiral based on approximately 41 years of service, was prejudicial. One item of damages that he claimed was that he lost one hundred dollars per day, which he otherwise would have received acting as a consultant, because he had to stay home and care for Mrs. Murray. Indisputably, it was the plaintiffs' duty to act reasonably to mitigate damages. *Chamberlain* v. *Palmer Lumber Co.,* 104 N. H. 221, 224; 25 C.J.S., Damages, *s.* 33, *p.* 701. Therefore, it obviously became material to determine whether the plaintiff's resources were such that he could reasonably have hired a maid to assist his wife at a cost far less than the amount of the earnings he lost by staying home. The evidence was therefore relevant upon this issue and admissible within the Court's discretion. See *O'Malley* v. *McGillan,* 86 N. H. 186, 187; *Sweeney* v. *Willette,* 98 N. H. 512, 514. If the plaintiffs feared the misuse of this evidence, it was incumbent upon them to ask for a special instruction. *O'Malley* v. *McGillan, supra.* In the absence of such, the plaintiffs' exceptions are unavailing.

The authorities cited as supporting the plaintiffs are inapposite, as they included different factual situations and different principles. In *Chapman* v. *Lee,* 80 N. H. 484, upon which they rely, the court, in setting aside a verdict, held that counsel's remark, " though the plaintiff was driving a Packard car, it doesn't look as though he was a very rich man " ( *Id.,* 485 ), was error, as equivalent to an instruction that the plaintiff was a poor man. Unquestionably, wealth or poverty per se is generally both inadmissible and prejudicial. However, when, as in the case now before us, the plaintiff husband's income bore directly on the vital issue of whether he reasonably could have mitigated his damages, evidence as to his earnings could have been found to be pertinent and admissible. See *O'Malley* v. *McGillan, supra.*

What we have said renders unnecessary consideration of the defendant's exceptions, and no error appearing in the record, the order is

*Judgment on the verdicts.*

DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting*: The charge in this case told the jury with respect to the rules received in evidence merely that " the rules of the . . . railroad and the customs which they observed over the years are evidence as to the methods by which the railroad operated. " There was no suggestion that the rules were evidence of the " reasonable necessity for the conduct thereby prescribed " ( *Topore* v. *Railroad*, 78 N. H. 536, 537; *Descoteau* v. *Railroad*, 101 N. H. 271, 274), and the jury was told that the rules were no substitute " for your own good judgment as to whether . . . the railroad . . . was negligent. " An instruction that " whether or not the railroad employees complied with the rules " was " evidence of whether or not the . . . railroad was negligent " was minimized by the emphasis placed on the issue of apparent necessity for assistance " as far as the defendant's agents were concerned, " and an instruction to consider among other circumstances " whether or not [ the defendant's agents ] were available to assist [ the plaintiff ] at the time she should have been assisted. " The latter instruction in particular was open to the interpretation that if the defendant's agents were not then " available to assist, " the necessity for assistance could be found not to have become apparent " as far as [ they ] were concerned. "

In addition to rule 815 quoted in the majority opinion, another rule required passenger trainmen " when in attendance upon their trains at stations " to " maintain an erect attitude near the steps of the car at which they are stationed except when assisting passengers. . . . " Taken as a whole, the instructions operated to deprive the plaintiff of the benefit of the rules of the railroad, which were designed to require that assistance be made available to her regardless of what the train crew thought appropriate.

To the extent that the standard of reasonable care on the part of the railroad was set out in the charge, the defendant's conduct was to be judged subjectively from the standpoint of what was reasonably apparent to the train crew, rather than objectively from the standpoint of reasonable care in the light of the rules requiring necessary assistance to be rendered. Thus, although the railroad itself had determined that reasonable care required that its agents make assistance available to passengers boarding its trains, the instructions made its duty depend upon whether it appeared to its agents that assistance should be made available.

Yet it could be found that compliance with the rules would have placed a trainman in a position to aid the plaintiff when aid was needed.

The plaintiffs' fourth and fifth requests for instructions were denied in form and in substance, and in my opinion this was prejudicial error.