**William A. HOFFMAN**

v.

**NISSAN MOTOR CORPORATION IN U.S.A.**

**No. C77–322.**

United States District Court, D. New Hampshire.

March 19, 1981.

Randolph J. Reis, Brown & Nixon, P.A., Michael P. Hall, Manchester, N.H., for plaintiff.

James Q. Shirley, Sheehan, Phinney, Bass & Green, P.A., Michael C. Harvell, Manchester, N.H., for defendant.

## ORDER'ON POST TRIAL MOTIONS

LOUGHLIN, District Judge.

Plaintiff William A. Hoffman sued defendant Nissan Motor Corporation in U.S.A. on the basis of age discrimination alleging violations of the provisions of section 4 of the ADEA (29 U.S.C. § 623) and section 15 of the FLSA (29 U.S.C. § 215).

Plaintiff was employed by the defendant from February 8, 1965 through May 17, 1976 at which time he was discharged by the defendant. Plaintiff was fifty-three years of age at the time of his discharge.

After a jury trial of approximately two weeks, a verdict was returned in the sum of $79,624.87. By agreement of counsel the verdict was amended by reducing it to $78,343.05.

The jury in response to a special verdict found that defendant's violation of the ADEA was wilful. 29 U.S.C. § 626(b).

The court now rules on numerous post-trial motions.

The court addresses in the first instance the issue of liquidated damages.

The jury by special verdict found that the defendant's actions were wilful. In *Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1977) is the following language relating to liquidated damages.

That presumption is particularly appropriate here since, in enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provisions regarded as undesirable or inappropriate for incorporation. For example, in construing the enforcement sections of the FLSA, the courts had consistently declared that injunctive relief was not available in suits by private individuals but only in suits by the Secretary. *Powell v. Washington Post Co.*, 105 U.S.App.D.C. 374, 267 F.2d 651 (1959); *Roberg v. Henry Phipps Estate*, 156 F.2d 958, 963 (CA2 1946); *Bowe v. Judson C. Burns, Inc.*, 137 F.2d 37 (CA3 1943). Congress made plain its decision to follow a different course in the ADEA by expressly permitting "such . . . equitable relief as may be appropriate to effectuate the purposes of [the ADEA] including without limitation judgments compelling employment, reinstatement or promotion" "in *any* action brought to enforce" the Act. § 7(b), 29 U.S.C. § 626(b) (emphasis added). Similarly, while incorporating into the ADEA the FLSA provisions authorizing awards of liquidated damages, Congress altered the circumstances under which such awards would be available in ADEA actions by mandating that such damages be awarded only where the violation of the ADEA is wilful.

In a recent first circuit case, 1979, *Loeb v. Textron, Inc.*, 600 F.2d 1003, the court in remanding the case for a new trial addressed the issue of damages.

The ADEA provides that, "liquidated damages shall be payable only in cases of wilful violations of this chapter." 29 U.S.C. § 626(b). The trial court here awarded liquidated damages on the strength of the jury's specific finding that Textron's violation had been wilful.

Leaving aside the obvious, that a finding of "willfulness" would seem to preclude a finding of "good faith", we do not agree that a specified finding as to defendants' good faith under Section 11 of the Portal-to-Portal Act is required before liquidated damages may be awarded in an ADEA case. The Supreme Court, in comparing the ADEA and the FLSA in *Lorillard v. Pons supra*, read the ADEA to permit liquidated damages awards where an ADEA violation is "wilful", 434 U.S. at 581, 98 S.Ct. 866 [870], and noted that,

"Although § 7(e) of the ADEA, 29 U.S.C. § 626(e), expressly incorporates §§ 6 and 10 of the Portal-to-Portal Pay Act, 29 U.S.C. §§ 255 and 259, the ADEA does not make any reference to § 11, 29 U.S.C. § 260 . . . ." 434 U.S. at 581–82 n.8, 98 S.Ct. at 870. This selectivity is strong evidence that Congress did not intend to graft Section 11 onto the ADEA. *See id.* at 582, 98 S.Ct. 866 [871]. The reason is clear: under 29 U.S.C. § 216(b), standing alone, liquidated damages must be awarded once a violation is shown. Section 11 mitigates this result in FLSA cases. *Id.* at 581 n.8, 98 S.Ct. 866 [870]. In ADEA cases, the "willfulness" test serves the same function and renders Section 11 superfluous.

Counsel for the plaintiff agreed to amend the verdict from $79,624.87 to $78,343.05, the higher of the sums being reduced by money the plaintiff earned as a taxi driver after he was wrongfully discharged.

Defendant's counsel at the hearing on March 10, 1981 suggested that the court rule on the issue of wilfulness.

The court opines that this was strictly an issue for the jury. If the court is in error, it is the finding of the court that the court agrees 100% with the jury's verdict as to wilfullness. The demeanor of certain witnesses for the defendant of course is not evident from the record. The lack of sensitivity and apparent callous attitude of defendant's executives was there for the triers of fact to discern.

Liquidated damages are thus awarded in compliance with the jury verdict in the sum of $78,343.05 or a total sum of $156,686.10.

The next issue is whether the plaintiff should be reinstated as an employee of the defendant.

■ The court has already made some comments about some of the defendant's witnesses who candidly are at the managerial level, said remarks were not complimentary, but are nevertheless part of the record. While the defendant should not benefit by apparent intransigence, to order the plaintiff reinstated would be a harbinger of disaster and a catalyst to more litigation. Reinstatement is denied.

Plaintiff in the alternative has requested that he be reimbursed at least $20,000.00 based it appears on the cost to him of starting a business after he was wrongfully terminated. This was used for equipment for steam cleaning and washing buildings, etc. Plaintiff's counsel argues that a financial award is also available in lieu of reinstatement.

The court in *Loeb v. Textron, supra,* addressed the issues of reinstatement, pension benefits and award of payments in lieu of reinstatement.

An award of pension benefits is plainly authorized under the ADEA. Congress intended that the calculation of "amounts owing" to a prevailing plaintiff include "items of pecuniary or economic loss such as wages, fringe, and other job-related benefits." H.Conf.Rep.No. 95–590, 95th Cong., 2d Sess. 13, reprinted in [1978] U.S.Code Cong. & Admin.News pp. 528, 535. Pension benefits are part of an individual's compensation and, like an award of back pay, should be awarded under 29 U.S.C. § 626(b). If a prevailing plaintiff is returned to the defendant's employment, this award will consist of payments to the pension fund of plaintiff's behalf, bringing plaintiff's pension interest to the level it would have reached absent discrimination.

When reinstatement is not ordered, any pension benefits due a prevailing plaintiff normally should be liquidated as of the date damages are settled, see *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 235 (N.D.Ga.1971), and should approximate the present discounted value of plaintiff's interest. Just as with back pay, the award should be computed as if plaintiff had been employed until the date damages are settled. Where the time from plaintiff's initial employment until that date does not meet the employer's vesting requirements, some pension award may still be appropriate—an employer need not be allowed to stand on requirements that plaintiff cannot meet because of the employer's own wrongful acts. In such cases, the district court will have to exercise its discretion carefully. At the least a plaintiff will be entitled to whatever would have been paid into the pension fund on his behalf. At most, he will be entitled to be treated as a vested employee and to receive a pension award based on employment from when he was first hired until damages are settled or on the minimum vesting period. This is a matter of some technicality, however, and one that we leave largely to the trial court's discretion.

A more difficult question is raised by the award of payments in lieu of reinstatement. Defendants argue that the court abused its discretion by making this award; they argue that reinstatement is a discretionary remedy and that it is virtually unprecedented to award payments when reinstatement is found to be inappropriate. Plaintiff argues, on the other hand, that he should have been reinstated. Neither party, however, has addressed the relevant issues in any meaningful way; lacking the benefit of adequate briefing on this matter, we confine ourselves to noting the crucial questions to be considered before any such award is made, and to offering some tentative answers. See *Vazquez v. Eastern Airlines, Inc.,* 579 F.2d 107, 112 (1st Cir. 1978). Should Loeb prevail on remand, these questions should be given more thorough consideration by the district court.

The ADEA damages section provides that,

"In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation,"

29 U.S.C. § 626(b). While this language is expansive, we have noted previously that it is limited for the most part by the remedies available under the FLSA, *Vazquez, supra,* 579 F.2d at 109; see 29 U.S.C. § 626(b); *Lorillard v. Pons, supra,* 434 U.S. at 582, 98 S.Ct. 866 [871]; 113 Cong.Rec. 31254 (1967), but see 29 U.S.C. § 626(b); and thus have held that damages for pain and suffering are not available in ADEA suits because they are not available under the FLSA, except to the extent that they are encompassed by liquidated damages, *Vazquez,* 579 F.2d at 110–11 & n.3. On the other hand, the Supreme Court has said that courts generally have power "to provide complete relief in light of the statutory purposes" of the FLSA, *Mitchell v. Robert De Mario Jewelry, Inc.,* 361 U.S. 288, 291–92, 80 S.Ct. 332, 335, 4 L.Ed.2d 323 (1960).

Given these principles, three questions are raised by the present case: First, what standards must govern the district court in deciding whether to grant or deny reinstatement to a prevailing plaintiff"? See generally *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 415–22, 95 S.Ct. 2362, [2370–74] 45 L.Ed.2d 280 (1975). Second, assuming that reinstatement is properly denied, are damages in lieu thereof authorized or prohibited under the FLSA: does the legislative history of the ADEA counsel any different result? Finally, if such damages are available, what standards should govern the district court in deciding what amount, if any, to award?

To answer these questions, should they need to be addressed after the new trial, the district court should examine, inter alia, the traditional equitable powers of the federal courts and the remedies available under the FLSA. A relevant starting point may be 29 U.S.C. § 215(a)(3), which prohibits the retaliatory discharge of employees and is the FLSA provision most analogous to the ADEA's prohibition against discriminatory discharges. There appear to be only a limited number of cases decided under this section, with some, but very limited, precedent for awards in lieu of reinstatement thereunder. A voluntary payment of $100 was made by the defendant in *Wirtz v. Atlas Roofing Manufacturing Co.,* 377 F.2d 112, 115 n.5 (5th Cir. 1967), and the question of payments in lieu of reinstatement was addressed directly in *Goldberg v. Bama Manufacturing Corp.,* 302 F.2d 152 (5th Cir. 1962). There the Fifth Circuit, having held that the plaintiff had been discriminatorily discharged but was not entitled to reinstatement, said that he was entitled to back pay and that the trial court, if it chose, could award some damages in lieu of reinstatement. 302 F.2d at 156–57.

The Fifth Circuit's suggestion of damages in lieu of reinstatement was based in part on a statement the Supreme Court quoted with approval in Robert De Mario Jewelry, supra:

"Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. * * *

[T]he court may go beyond the matters immediately underlying its equitable jurisdiction * * * and give whatever other relief may be necessary under the circumstances,"

361 U.S. at 291, 80 S.Ct. at 335, quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). *Goldberg,* 302 F.2d at 157 n.3. The Supreme Court's endorsement of

broad equitable relief in that case must be taken with caution, however. The court has never been confronted with the issue of damages in lieu of reinstatement and, undoubtedly because of the difficulty of ascertaining future damages, there does not appear to be significant authority for such awards by "equity courts," except perhaps in cases involving the breach of employment contract of specified duration. Nor did the court in De Mario or the Fifth Circuit in Goldberg discuss the legislative history of the FLSA as it bore on this particular issue. Further, in the few Title VII and FLSA cases in which payments in lieu of reinstatement have been made, the amounts have been relatively small and have been designed to assist plaintiff during the period in which he can be expected to find other employment. *Atlas Roofing, supra*, 377 F.2d at 115 n.5 and cases cited in note 31, *supra*. The reasons for this approach are clear: First, payments in lieu of reinstatement are payments for services not rendered. Second, any assessment of what an individual might have earned had he been reinstated usually is highly speculative, given the possibilities of promotions or legitimate demotions or terminations. Assuming, without in any way deciding, that a monetary award may be made in lieu of reinstatement, we suspect that both continuing payments and substantial awards calculated, for example, on the basis of life expectancy would be inappropriate. For the time being, however, we leave all of these questions open for initial consideration by the district court, if they surface again after a new trial.

The first circuit in *Loeb v. Textron, supra*, has left the question open relating to a monetary award in lieu of reinstatement with certain caveats.

■ Under the circumstances of this case, the defendant's conduct placed the plaintiff who was in advanced middle age in a precarious position in the available job market. Plaintiff also had a duty to mitigate damages. *Murray v. Boston & Maine R.R.*, 107 N.H. 367, 224 A.2d 66 (1966).

■ Plaintiff worked as a taxi driver, attempted vainly, but valiantly to procure other employment and finally started a business of his own. In order to do so he sold real estate and exhausted most of his savings accounts. He had $300.00 left in his savings account. Under the court's inherent equitable powers the court awards the plaintiff $20,000 damages in lieu of reinstatement. *Mitchell v. Robert De Mario Jewelry, Inc., supra.*

■ Plaintiff also seeks pension rights. As heretofore stated, when reinstatement is not ordered any pension benefits due a prevailing plaintiff should be liquidated as of the date damages are so settled. The court rules that pension benefits are awarded as of the date damages are settled. Plaintiff shall be entitled to be treated as a vested employee and to receive a pension award based on employment from when he was first hired until damages are settled.

Plaintiff's counsel seeks attorneys fees in the alternative. They contend that they are entitled to a contingent fee of one third in the sum of $53,083.25, exclusive of any fee for additional awards the court may grant such as pension, medical payments and damages in lieu of reinstatement. If not allowed this fee, they seek attorney's fees on an hourly basis; 540.1 hours or $32,858.00. Plaintiff has incurred costs of $5,195.07.

■ Plaintiff's approach to a contingent fee based on one-third of a total recovery is a novel one which ordinarily should have some merit, but the court does not believe it would be apposite in an ADEA case.

Counsel do agree that in the event the court rules that a contingent fee is not granted, the criteria set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) should apply.

This case was cited with approval by the first circuit in *King v. Greenblatt, et al.*, 560 F.2d 1024 (1977).

■ What constitutes a reasonable attorney's fee in a particular case shall rest

within the sound discretion of the district court, *King v. Greenblatt, et al., supra,* 1026.

The court must adhere to certain general criteria in making a discretionary award under the fees act.

Twelve factors are to be considered by the district court in arriving at reasonable fees awards.

The time and labor required; the novelty and difficulty of the question presented; the skill required to perform the legal services; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee in the community; whether the fee is fixed or contingent; time limitations imposed by client or circumstances; the amount involved and the results obtained; the experience, reputation and ability of the attorney; the undesirability of the case; the nature and length of the professional relationship with the client; awards in similar cases. *Id* [488 F.2d] at 717–19. These criteria are similar to those in the ABA Code of Professional Responsibility and we approve them for use in Fees Act cases within this circuit with the following observations.

As a starting point the attorney or attorneys must submit to the court a detailed record of the time spent on the case and the duties performed. See *Stanford Daily v. Zurcher,* 64 F.R.D. 680, 582 (N.D.Cal.1974), aff'd, 550 F.2d 464 (9 Cir. 1977). The court must secure from the attorneys a full and specific accounting for their time; bills which simply list a certain number of hours and lack such important specifics as dates and the nature of the work performed during the hour or hours in question should be refused. Furthermore, "[a]n attorney's record of time is not a talisman", *Rainey v. Jackson State College,* 551 F.2d 672, 677 (5th Cir. 1977); the district court should scrutinize it with care.

"The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the times required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted. It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson v. Georgia Highway Express, Inc., supra,* 488 F.2d at 717.

Once the time and labor required have been fully evaluated, the district court should apply the relevant *Johnson* criteria in arriving at a reasonable fee. In so doing, it would be helpful for the court to set out in the record the basis for the award and any pertinent findings of fact. See, e. g., *Stanford Daily v. Zurcher, supra.* Care obviously should be taken to avoid excessive fees. The "normal" per hour rate in a locale is itself an artificial construct. Actual bills will frequently be lower, sometimes much lower, than that rate might indicate; on exceptional occasions they may however exceed it. While the modest Criminal Justice Act rates might allow a more mechanical application, an assumed marketplace rate is never to be applied across the board without regard to the difficulty of the work the results achieved and all other relevant factors. *King v. Greenblatt, supra,* 1026–27.

Taking the criteria in order.

1. Time and labor involved. On the court's docket alone there are eighty-three docket entries. The jury trial commenced on February 9, 1981; the case was submitted to the jury on February 23, 1981 at 3:30 P.M. A verdict was returned on February 24, 1981 at 1:12 P.M. There was a great amount of discovery and depositions in this case.

2. The novelty and difficulty of the question presented. The court's experience as a federal judge is limited to one year and nine months at the date of this trial, having had almost sixteen years experience prior to federal service on the New Hampshire Superior Court. This was the first ADEA case the court has had. I found the case novel and difficult not only for all counsel involved but also the court especially in attempting to follow the guidelines enunciated in *Loeb v. Textron, supra,* certain areas not being that pristine.

3. The skill required to perform legal services. This case in the court's opinion took exceptional skill as it was not an easy case to try.

4. The preclusion of other employment by the attorney due to acceptance of the case.

New Hampshire has a small bar, approximately eighteen hundred members; fifteen hundred roughly are active in the practice and of that number a minority engaged in actual trial practice. The two attorneys involved in this case are members of a nine member firm. This firm specializes in trial work, has referral cases sent to the firm, enjoys a reputation for being well prepared, demand on the firms services are many, while a relatively new firm, it is seasoned with veteran and young trial attorneys. 540.1 hours no doubt obviated other employment by the firm.

5. The customary fee in the community. The one-third contingent fee and the itemized hourly bill is customary not only in the community, but throughout the State of New Hampshire.

6. Whether the fee is fixed or contingent. The court has ruled that the fee is fixed on an hourly basis.

7. Time limitations imposed by client or circumstances. The itemized bill of counsel is a good criteria of the time that counsel spent with his client, personally, through letters, and by telephone. Client's residence in Keene, New Hampshire is a distance of approximately 55 miles from counsel's office.

8. The amount involved and the results obtained. The amount involved approximates close to $250,000.00. The results obtained were excellent from the plaintiff's perspective.

9. The experience, reputation and ability of the attorneys.

Two attorneys were involved in this case, both relatively young. Attorney Michael P. Hall commenced the practice of law in.New Hampshire in 1972. Attorney Randolph J. Reis commenced the practice of law in 1975.

The reputation of the more experienced counsel, Hall, is excellent as is Attorney Reis.

For such a young man, Attorney Hall is very experienced and able as he has appeared as lead counsel and associate counsel before this judge in both state and federal courts on many cases of consequence.

Attorney Reis, considering he has been practicing about six years, has more experience and ability than most trial lawyers who have been practicing ten years or more.

At this point in the court's findings, the court states unequivocally that Attorneys Hall and Reis comported themselves as well as any veteran trial attorney could in this difficult and arduous case. To penalize them for their youth concerning their fees would mock justice and any system of fair play.

10. The undesirability of the case.

This is difficult to use as a criteria. All the court can state is that it was not an easy one to prepare and try. No quarter was given by able, experienced counsel representing the defendant. Settlement attempts by the court and counsel were nugatory.

11. The nature and length of the professional relationship with the client.

Reference is made to the itemized bill and prior comments made by the court. See number 7.

12. Awards in similar cases.

As stated the court does not have any personal input as this is the court's first ADEA case.

■ The court has scrutinized carefully plaintiff's counsel's bill and rules that it is fair and equitable and approves attorney's fees in the sum of $32,858.00.

Plaintiff is also seeking prejudgment interest which is opposed by the defendant.

In *Barcellona et al. v. Tiffany English Pub, Inc.* 597 F.2d 464 (5th Cir. 1979) former waiters attacked the restaurant's policy of using their tips to satisfy its obligation to pay a minimum wage in a Fair Labor Standards Act suit. The district court's award of prejudgment interest was reversed. Citing *Foremost Dairies, Inc. v. Ivey*, 204 F.2d 186 (5th Cir. 1953).

*Foremost Dairies, Inc. v. Ivey, supra,* was a suit under the maximum hours provisions of the Fair Labor Standards Act, 29 U.S. C.A. §§ 207, 216. At page 190, the court commented. Liquidated damages, if allowed, would act as compensation for delay in the payment of sums due under the Act.

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296. We agree with the Third and Sixth Circuits that interest as such is not recoverable under this statute.

*Masters v. Maryland Management Co.*, 493 F.2d 1329, 1334 (4th Cir. 1974) was another suit under the Fair Labor Standards Act. The court rules that the award of liquidated damages more than adequately compensated the plaintiff for the delay in payment of overtime wages due him, and the district court was correct in its refusal to award prejudgment interest.

*Hodgson v. Miller Brewing Company*, 457 F.2d 221 (7th Cir. 1972) were suits arising under the Fair Labor Standards Act of 1938 (Act) and the Equal Pay Act of 1963. At page 229 of that decision the court addressed the issue.

Whether the district court erred in concluding that where the maximum amount of liquidated damages are awarded it cannot in addition award interest on the back pay.

The Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., is silent as to the allowance of interest. Prior to the enactment of the Portal-to-Portal Pay Act of 1947, *inter alia*, 29 U.S.C.A. § 260, which made the award of liquidated damages discretionary, the courts were required to award liquidated damages in an amount equal to the actual damage award. Accordingly, prior to the enactment of § 260, the Supreme Court in *Brooklyn Bank v. O'Neil, supra* held, in regard to 29 U.S.C.A. § 216(b), that "[t]o allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages."

Regardless of the change in the basis for awarding liquidated damages, as evidenced by § 260, we think that *Brooklyn* is still controlling where, as here, the maximum amount of liquidated damages are awarded. All federal appellate cases brought to our attention where interest has been awarded involved situations where liquidated damages had not been awarded; hence, they are distinguishable from the case at bar. See *Hodgson v. Daisy Manufacturing Company*, 8 Cir., 445 F.2d 823 (1971). *Hodgson v. Wheaton Glass Co.*, 3 Cir.; 446 F.2d 527, 534 (1971); *McClanahan v. Mathews*, 6 Cir., 440 F.2d 320, 325 (1971); and *Holtville Alfalfa Mills v. Wyatt*, 9 Cir., 230 F.2d 398, 401 (1955). Thus, we find that the district court was correct in its determination not to award interest in addition to liquidated damages.

*Hodgson v. American Can Co.*, 440 F.2d 916 (8th Cir. 1971) was an action under the Fair Labor Standards Act alleging discrimination against female employees. Interest was allowed for back wages, but the employees did not receive any liquidated damages.

*Brennan v. Board of Education, Jersey City, New Jersey*, 374 F.Supp. 817 (D.N.J. 1974) was a suit alleging a violation of the "equal pay" provisions of the Fair Labor Standards Act by discriminating on the basis of sex.

The court concluded that the defendant is obliged to pay interest at the prevailing rate compounded annually upon all back wages. The employees did not receive any liquidated damages.

■ The court denies plaintiff's requests for prejudgment interest.

■ The court denies plaintiff's request that he be awarded wages for medical, disability and life insurance benefits as evidence was not introduced at the trial relating to these claims for damages.