**Thomas B. MONROE, Jr.**

v.

**PENN–DIXIE CEMENT COR-
PORATION.**

**Civ. A. No. 12290.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 27, 1971.

Neely, Freeman & Hawkins, Atlanta, Ga., for plaintiff.

Peek, Whaley & Haldi, Atlanta, Ga., for defendant.

SIDNEY O. SMITH, Jr., Chief Judge.

Plaintiff, Thomas Monroe, brought this action for damages against defendant, Penn-Dixie Cement Corp., under the provisions of the recently enacted Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.[1] Specifically, he complained that he was discharged from his job with defendant because of his age: he was 58 at the time. The case was tried before a jury, and the jury found for plaintiff in the sum of $23,785. Now, defendant moves for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Defendant submits three contentions: (1) plaintiff was discharged from his position on May 17, 1968; therefore, the Age Discrimination in Employment Act (hereinafter called the Act or the Age Discrimination Act), which became effective on June 12, 1968, and upon which plaintiff relies for relief was inapplicable; (2) even if the Age Discrimination Act were applicable, there is no evidence whatsoever of any violation of the Act; (3) even if the Age Discrimination Act were applicable and there was evidence it was violated by defendant, the dollar verdict of the jury is unsupportable.

If the Age Discrimination Act was not yet effective when plaintiff was discharged, then of course, the discharge could not be unlawful under the Act. The Act became law on June 12, 1968; furthermore, it is undisputed that on May 15, 1968, plaintiff was notified that May 17, 1968, would be his last day with Penn-Dixie and that he has not actually worked for that corporation since. This seemingly simple situation is complicated somewhat, however, by the fact that plaintiff was due five weeks paid vacation on May 17. Plaintiff argues that the five weeks accrued vacation to which the plaintiff was entitled, extended his tenure of employment for the period of five weeks thereby making the effective date of discharge June 13, 1968, one day after the Age Discrimination Act became law.

A discharge occurs when there are any acts or words which show a clear intention on the part of the employer to dispense with the services of the employee and which are the equivalent to a declaration that the services will *no longer be accepted. Accord* Taylor v. Tulsa Tribune Co., 136 F.2d 981, 983 (10th Cir. 1943). Applying this standard to the facts here, this court has no doubt that when plaintiff was told

---

1. There appear to be only two reported cases under the Age Discrimination in Employment Act of 1967. See Hodgson v. American Hardware Mut. Ins. Co., 329 F.Supp. 225 (D.Minn.1971); Stringfel-low v. Monsanto Co., 320 F.Supp. 1175 (W.D.Ark.1970). Neither is helpful in resolving the questions appearing in this action.

May 17, 1968, would be his last day with Penn-Dixie, his employment terminated as of that date. The paid vacation time does not change the date of plaintiff's discharge. A vacation with pay is, in effect, only additional pay for work already done. In re Wil-Low Cafeterias, 111 F.2d 429, 432 (2d Cir. 1940) (Augustus Hand, J.). Plaintiff, by working for defendant over a year, had already earned his vacation pay when he was discharged; he had a contractual or quasi-contractual right to the vacation pay, and he was in fact paid the vacation pay plus severance pay by check on May 22, 1968. Nevertheless, Penn-Dixie terminated plaintiff's employment relationship with it on May 17. Plaintiff's contractual right to receive pay already earned did not include the right to continue as defendant's employee against its will. Had the Age Discrimination Act been in effect on May 17, 1968, plaintiff would have had a cause of action under the Act as of that day, but the Act was not effective at such time.

Incidentally, Mr. Monroe, who has been admitted to the Tennessee Bar, seems to have considered himself unemployed as of May 17. On May 22, 1968, he filed for unemployment benefits; in his application for benefits, he categorically said he was then unemployed and said that his previous employment lasted from May, 1947, through May 17, 1968. Moreover, in a letter to Penn-Dixie's pension fund officer, plaintiff said he assumed that any early retirement benefits he might elect to take would be retroactive to June 1, 1968. This is significant since apparently one could not draw retirement benefits while still an employee.

It also seems significant that the Department of Labor, which under the Act must be given an opportunity to eliminate any claimed discrimination grievance by mediation before a private plaintiff may proceed to court, refused

to aid Mr. Monroe because it found that he was discharged on May 17, 1968, and that, therefore, the discharge was not a violation of the Age Discrimination Act which became effective on June 12, 1968. See letter from Henry A. Heuttner, Regional Director, Department of Labor, to Thomas B. Monroe, December 9, 1968.

Because the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., was not in effect on May 17, 1968, the day on which plaintiff's employment was terminated, the verdict against defendant cannot stand.[2]

Although not strictly essential to the ruling on defendant's motion, the court deems it appropriate to rule on defendant's other contentions.

■ Assuming arguendo that the Act was effective when plaintiff was discharged, the next question is whether the evidence supports the jury's finding that plaintiff was discharged because of his age. The question is essentially one of fact and the court concludes that there is sufficient evidence to support the jury's finding, although the court, itself, might not have reached the same conclusion from the evidence. "The state of proof [was] such that reasonable and impartial minds *could* reach the conclusion the jury expressed in its verdict." See Har-Pen Truck Lines, Inc. v. Mills, 378 F.2d 705 (11, 12, 13) (5th Cir. 1967).

■ Again assuming arguendo that the Act was effective when plaintiff was discharged, the question of the quantum of damages is raised. A person may recover amounts owing to him as a result of a violation of the Act. The court concludes that, at most, the plaintiff in this case would be entitled to less than a third of the $23,785 awarded by the jury. The damages should properly equal the difference between the value of the compensation by way of salary[3]

---

2. Regrettably, this issue could clearly have been raised by motion for summary judgment prior to trial.

3. Although the Act speaks in terms of recovery of "unpaid minimum wages or unpaid overtime compensation", if the court

together with other specific monetary benefits, such as increased pension benefits which would have vested prior to trial, to which plaintiff would be entitled had he remained employed by defendant until the trial date and the value of his total benefits and earnings at other jobs from his discharge until the trial date.[4] Any suggestion that the computation of damages should be projected beyond the date of trial by setting off what plaintiff might have earned if he had remained in Penn-Dixie's employ until his death or retirement against what he might earn at his new job during the same time is rejected. Looking beyond the fact that such a computation would be highly speculative (especially in cases where the plaintiff was in his forties and, thus, had many years ahead in which he might or might not get raises, reductions, fired, or incapacitated all of which could greatly affect his future earnings) the computation ignores the fact that the courts are specifically empowered by the Act to reinstate a successful plaintiff in his old job. Such a reinstatement would stop any further damage to plaintiff. If the plaintiff does not request reinstatement on the date of judgment in the case, the parties stand in the same position as if the court had reinstated plaintiff and he instantaneously quit the job for a reason having nothing to do with discrimination. Put more plainly, money damages in a case under the Age Discrimination Act must be liquidated as of the date of judgment. If the plaintiff does not

wish injunctive relief, he waives any unliquidated future rights he might have against his former employer. Correspondingly, the defendant employer cannot reduce the damages against him by showing that his former employee's new job or opportunities are so lucrative that, in say, ten years he will be better off than if he had stayed with defendant.

■ Plaintiff has claimed attorney's fees and costs. Since plaintiff's judgment must be set aside, such relief is unwarranted. However, if plaintiff's judgment were proper, the court would have allowed, in addition to the verdict, reasonable attorneys fees to be paid by defendant, the amount of which was reserved for the court at trial, and costs. Although the Act does not itself expressly provide for attorney's fees, the Act does state that it is to be "enforced in accordance with the powers, remedies and procedures provided in sections 211(b), 216 (except for subsection (a) thereof) . . . of this title . . . Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages . . . for the purposes of sections 216 . . . ." 29 U.S.C. § 626(b). Title 29, section 216 of the United States Code provides for recovery by plaintiffs of attorney's fees and costs. Therefore, reasonable attorney fees and costs appear allowable in suits under the Age Discrimination Act. Halgreen, Age Discrimination in Employ-

---

determines that an aggrieved person suffered a pecuniary loss because of a violation of the Act, it is agreed the court should order the violator to repay such loss and for the purposes of the Act, any amount so paid will be deemed to be "minimum wages or unpaid overtime compensation." See Halgreen, Age Discrimination in Employment Act of 1967, 43 L.A.B.Bull. 361, 364 (1968).

Parenthetically, the plaintiff contended that the words "liquidated damages" in the statute [29 U.S.C. § 626(b)], granted the right to sue and recover for punitive damages. At trial, the court ruled that the phrase is tantamount to the recovery

of liquidated damages in Wage-Hour matters and is to be governed by normal standards applied in such cases. 29 U.S.C. § 216(b), § 260. See also McClanahan v. Mathews, 440 F.2d 320 (6th Cir. 1971); Martin v. Detroit Marine Terminals, 189 F.Supp. 579 (E.D.Mich. 1960) (liquidated damages are granted by the judge not jury).

4. If the court had not already decided to grant defendant's motion for judgment notwithstanding the verdict, the court would likely grant defendant a new trial solely on the issue of damages unless the plaintiff agreed to remit some $17,785.

ment Act of 1967, 43 L.A.B.Bull. 361 (1968).

For the reasons previously stated, defendant's motion for judgment notwithstanding the verdict must be granted.

It is so ordered.