Louis **GINSBERG**, Plaintiff,

v.

**BURLINGTON INDUSTRIES, INC.**, Defendant.

**No. 78 Civ. 6055.**

United States District Court, S. D. New York.

Oct. 29, 1980.

Geoghan & Tutrone, New York City, for plaintiff; William F. X. Geoghan, Jr., Steven E. Cohen, Peter Alpi, New York City, of counsel.

Winer, Neuburger & Sive, New York City, for defendant; Daniel Riesel, Lawrence R. Sandak, New York City, of counsel.

## OPINION

SOFAER, District Judge:

Plaintiff Louis Ginsberg brought this action against his former employer, defendant Burlington Industries, Inc., alleging that he was discharged from his position as a salesman in Burlington's Dallas, Texas office because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. On July 7, 1977, after 27 years of employment, Ginsberg was informed of Burlington's decision to terminate him. Ginsberg was removed from the active payroll on November 30, 1977, but received his annual salary until November 30, 1978 as severance pay.

On September 10, 1980, a jury returned a verdict for Ginsberg on the issue of liability under the ADEA. All other issues, including those involving damages, were the subject of pre–trial stipulations or were left to the decision of the court by agreement or by the terms of the statute. The ADEA includes the following provision governing remedies:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: *Provided*, that liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b).

### I. *Reinstatement*

After the trial ended, plaintiff moved to amend his complaint to include a request that he be reinstated as a salesman in Burlington's Dallas office. Defendant asserts that the motion should be denied as untimely and prejudicial on the ground that a pre–trial order signed by the plaintiff on April 28, 1980 constituted a waiver of the right to amend the complaint. Specifically, defendant points to the language of paragraph 1 of the order which states that "[t]he pleadings shall not be further amended after the date of this Order" as well as paragraph 2 which reads: "The trial of this action, including the submission of evidence and the calculation of damages, if any, shall be based upon this Order and limited by the pleadings as amended herein."

Courts should be hesitant to set such stipulations aside, except where necessary to avoid clear injustice. *See, e. g., Marshall v. Emersons Ltd.*, 593 F.2d 565 (4th Cir. 1979); *Henry v. Commissioner*, 362 F.2d 640 (5th Cir. 1966). Moreover, other portions of the pre–trial order and representations to the Court concerning the availability of various remedies make no mention of reinstatement.

These facts are quite similar to those at issue in *Wehr v. Burroughs Corp.*, 619 F.2d 276, 284 n.19 (3d Cir. 1980), where the Court of Appeals for the Third Circuit held, in an age discrimination case, that the District Court acted within its discretion in refusing to allow the plaintiff to amend his complaint to seek reinstatement after trial. The decision in *Wehr* was based on an explicit disclaimer of a desire for reinstatement made in a letter to the court. Similarly, plaintiff here had taken the position that he was seeking only money damages, until after the Court indicated that he could not receive prospective damages or damages for pain and suffering. The timing of plaintiff's motion to amend reflects a change in tactics adopted to strengthen plaintiff's bargaining position rather than a sincere desire to return to his old job.

Even if plaintiff were permitted to amend his complaint, reinstatement would not be warranted under the circumstances of this case. The decision whether or not to reinstate lies within the discretion of the trial court. *Cleverly v. Western Electric Co.*, 450 F.Supp. 507 (W.D.Mo. 1978); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841 (W.D.Okl.1976). As Judge Weinfeld stated in a case arising under analogous provisions of Title VII of the Civil Rights Act of 1964,[1] "reinstatement is not mandatory upon a finding that an employee had been discriminatorily discharged, but is an equitable remedy whose appropriateness depends upon the discretion of the court in light of the facts of each individual case." *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 926 (S.D.N.Y.1976), *aff'd* 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). The evidence in this case overwhelmingly demonstrates that all of plaintiff's superiors at Burlington consider Ginsberg incompetent. While the jury's verdict necessarily represents a finding that age was a factor in Burlington's decision to fire Ginsberg, the evidence presented also shows that Burlington officials sincerely entertain serious doubts as to Ginsberg's ability to perform his job. Furthermore, Ginsberg has become embittered against Burlington and his superiors there, and does not genuinely wish to work for them. In short, as in *EEOC v. Kallir, Philips, Ross, Inc., supra*, the "[l]ack of complete trust and confidence between plaintiff and defendant could lead to misunderstandings, misrepresentations and mistakes, and could seriously damage defendant's relationship with its clients." *See also Combes v. Griffin Television, Inc., supra*. Reinstatement is denied.

## II. Monetary Damages

### A. Back Pay

Before trial, the parties stipulated to a schedule of damages to be applied if plaintiff prevailed. The schedule includes no provision covering potential damages for pain and suffering, liquidated damages, or attorney's fees; these items were left for the Court. The parties agree, however, that plaintiff is entitled to $24,084.00 to cover lost back pay for the period between November 30, 1978 and July 1, 1980.[2]

---

1. Title VII, 42 U.S.C. § 2000e–5(g) provides that "[t]he court may enjoin the respondent from engaging in such unlawful employment practices, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deem appropriate."

2. The pre–trial order, signed by both parties and dated April 28, 1980, contains the following stipulation:

   If judgment in this action is entered in plaintiff's favor within six (6) months of the date of this Order, the date of judgment for the purpose of calculating damages shall be July 1, 1980. If judgment is entered in excess of six months from the date of this Order, the

### B. *Prospective Damages*

Ginsberg claims that, if he is not granted reinstatement, he must be awarded damages for lost compensation to the date he would have retired at age 70. No case has specifically approved granting prospective damages. Two Circuit Court cases suggest that prospective damages might be available as an alternative to reinstatement, *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3d Cir. 1980); *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir. 1979), but defendant contends that neither the terms of the statute nor the relevant case law permit such a remedy.

The statutory language that deals directly with damages for lost compensation provides that "[a]mounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation . . . ." 29 U.S.C. § 626(b). This language has been interpreted to make the proper award of damages the difference between the compensation that plaintiff would have earned between the date of termination and the trial had he remained an employee of the defendant and the total of other compensation earned in this interim. *See, e. g., Brennan v. Ace Hardware Corp.*, 495 F.2d 368 (8th Cir. 1974); *Combes v. Griffin Television Inc.*, 421 F.Supp. 841 (W.D.Okl.1976); *Monroe v. Penn–Dixie Cement Corp.*, 335 F.Supp. 231 (N.D.Ga.1971).

Plaintiff counters that he is entitled to prospective damages under the provision of the ADEA that permits the court to "grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter . . . ." 29 U.S.C. § 626(b). The few courts that have specifically considered the issue of prospective damages, however, have concluded that such relief is unavailable under the ADEA. In *Monroe v. Penn–Dixie Cement Corp., supra,* Judge Smith found that "[a]ny suggestion that the computation of damages should be projected beyond the date of trial by setting off what plaintiff might have earned if he had remained in Penn–Dixie's employ until his death or retirement against what he might have earned at his new job is rejected." 335 F.Supp. at 235. *See also Jaffee v. Plough Broadcasting Co.*, 19 Fair Empl. Prac. Cas. 1194 (D.Md.1979); *Covey v. Johnston*, 19 Fair Empl. Prac. Cas. 1188 (D.Md. 1977).

Furthermore, the legislative history of the ADEA militates against awarding prospective damages. In enacting the statute, Congress intended to incorporate, at least in part, the enforcement provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19.[3] This is evidenced by both the specific language of the ADEA,[4] and its legislative history. *See Lorillard v. Pons*, 434 U.S. 575, 577–83, 98 S.Ct. 866, 868–872, 55 L.Ed.2d 40 (1978); *Vazquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1st Cir. 1978). In cases under the FLSA, awards of damages beyond those specified in the statute have been denied. *Martinez v. Behring's Bearings Service, Inc.*, 501 F.2d 104 (5th Cir. 1974); *Powell v. Washington Post Co.*, 267 F.2d 651 (D.C.Cir.1959).

The FLSA does not, it is true, contain language similar to that in the ADEA permitting courts flexibility in granting relief for violations of the statute. Nonetheless, the ADEA provision allowing the court to "grant such legal or equitable relief as may be appropriate . . . ." has not been read to authorize damages beyond those specifically

---

actual date of judgment shall be used for the purpose of calculating damages.

Despite this language, plaintiff claims he is entitled to $42.26 for each day beyond July 1, 1980 until entry of judgment. Because judgment is to be entered within the six month period, recovery is limited to the amount stipulated to in the pre–trial order.

3. Section 216(b) provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or the unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."

4. 29 U.S.C. § 626(b) provides that "[t]he provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section."

provided for in the statute. *See, e. g., Dean v. American Security Insurance Co.*, 559 F.2d 1036 (5th Cir. 1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978) (denying recovery for pain and suffering and punitive damages); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3d Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978) (denying recovery for pain and suffering).

Some courts have added the further argument that prospective damages should be denied because one of the major aims of Congress in enacting the ADEA was to encourage voluntary compliance with its standards.[5] To allow recoveries for lost wages from the date of discharge until the employee would have retired at age 70, these courts have suggested, could severely undermine the hope that aggrieved employees will compromise. "[A] valid statutory purpose is to be attained by pursuing voluntary compliance in lieu of hard—fought lawsuits, with substantial compensatory damages hanging in the balance." *Vasquez v. Eastern Airlines*, 579 F.2d 107, 111 (1st Cir. 1978). *See also Dean v. American Securities Insurance Co., supra; Rogers v. Exxon Research & Engineering Co., supra.*

One might seriously doubt the strength of this last argument. Compliance and compromise may in fact be facilitated by the possibility of more substantial recoveries. The difference, if any, were claims of prospective damage to be cognizable, would be that compliance and compromise would occur on terms more favorable to plaintiffs than if prospective damages were never available. Furthermore, while the argu-

ments against permitting prospective damages are weighty, they are not so overwhelming that one could confidently conclude that a District Court lacked any discretion to grant such damages, even where it had refused reinstatement. Assuming, therefore, that authority to grant such damages exists, such an award is nevertheless inappropriate under the circumstances of this case, where reinstatement was not genuinely pursued, and where the evidence that plaintiff performed inadequately was very substantial. Defendant acted in part with improper motive, the jury found, but it also had ample basis for its officers' unanimous view that plaintiff is an inadequate salesman. To require payment of plaintiff's salary till retirement would, under the circumstances, be unjust.

### C. Pain and Suffering

■ For the same reasons prospective damages have been held by courts to be unauthorized, the ADEA should be read to preclude damages for pain and suffering or other psychological injuries caused by Burlington's violation of the Act. *See Slatin v. Stanford Research Institute*, 590 F.2d 1292 (4th Cir. 1979); *Vazquez v. Eastern Airlines, supra; Dean v. American Security Insurance Co., supra; Travers v. Corning Glass Works*, 76 F.R.D. 431 (S.D.N.Y.1977). *But see Pavlo v. Stiefel Laboratories, Inc.*, 23 Empl. Prac. Dec. ¶ 30,926 (S.D.N.Y.1979); *Flynn v. Morgan Guaranty Trust Co.*, 19 Empl. Prac. Dec. ¶ 9079 (E.D.N.Y.1979). Liquidated damages is the intended remedy for willful violations, which are those violations that seem most likely to cause pain and suffering in addition to economic harm.

---

**5.** "It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Thus the statute includes a number of provisions designed to encourage conciliation between employers and employees. Section 626(d) provides that no action may be commenced until the potential plaintiff has given the Secretary of Labor sixty days notice of an intention to file suit. This interim is designed to give the Secre-

tary an opportunity to settle the dispute without litigation. The section provides that "[u]pon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."

Moreover, various other provisions of the ADEA direct the Secretary to conduct studies, provide information, suggest legislation, issue regulations, report to Congress, and take other steps to further the purposes of the statute. *See generally,* 29 U.S.C. §§ 621–34 (1976).

### D. Liquidated Damages

■ The ADEA provides that "liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U.S.C. § 626(b). The statute also provides that the enforcement procedures contained therein "shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and section 217 of this title, and subsection (c) of this section." *Id.* The availability of liquidated damages under the FLSA is governed by 29 U.S.C. § 216(b) which provides that wages lost shall be doubled. This provision is qualified by the Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–62, which states that liquidated damage awards may be reduced or limited "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act . . . ." 29 U.S.C. § 260.

Congress seems unlikely to have intended the ADEA to incorporate the limitation of 29 U.S.C. § 260. It did not specifically incorporate that provision into the ADEA. Moreover, a finding of willfulness under Section 626(b) would normally appear to preclude a finding of good faith. *See Wehr v. Burroughs Corp.,* 619 F.2d 276 (3d Cir. 1980); *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir. 1979). In any event, the present case involved a direct conflict in the testimony of plaintiff and his employer, which the jury appears to have resolved in plaintiff's behalf. While the defendant here may have acted more out of ignorance than malice, and while the jury was undoubtedly impressed with the unfairness of procedures for performance review which defendant has since reformed and improved, the case was ultimately based on plaintiff's claim that he was intentionally replaced by a younger man. Therefore, liquidated damages of $24,084.00, representing an amount equal to the award of back pay, are awarded.

### III. Attorneys' Fees

■ Prevailing parties in age discrimination cases are entitled to attorneys' fees, the precise amount of which lies within the discretion of the trial court. *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978).

■ Attorneys for the plaintiff request that their fee be calculated on one of two bases: (1) in accordance with the fee arrangement made with plaintiff at the time of their retainer ($2500 plus one–third of any recovery); or (2) on the basis of time expended in preparing for and conducting the trial (alleged to be 456 hours at $75 an hour, or $34,200). Defendant objects to both methods of computation, properly noting that the Court is not obligated to award fees in accordance with an agreement between plaintiff and his attorneys, and disputing a number of the specific claims set forth in the affidavit of plaintiff's counsel.

■ An award of attorneys' fees in accordance with the arrangement between plaintiff and his attorneys is appropriate in this case. Thus, plaintiff is entitled to $18,556.00, representing $2500 plus one–third of the back pay award (doubled as liquidated damages) of $48,168.00. This figure is within the range contended for by both parties. Furthermore, this method makes it unnecessary to conduct an item by item examination of plaintiff's specific request. The lead counsel for plaintiff showed considerable verbal skill and ingenuity, but his conduct unnecessarily delayed the trial's progress, and certainly no need existed for three attorneys to be present on the case at all stages. No award beyond the agreed compensation—which was reasonable—is warranted in these circumstances.

### IV. Costs

■ Plaintiff also claims he is entitled to recover the costs incurred in the course of this lawsuit. He requests $3,911.49 for personal travel expenses and $5,803.59 for expenses incurred by his attorneys in the

preparation and trial of this case. While costs are available to prevailing plaintiffs under the ADEA, they are limited to those described in 28 U.S.C. §§ 1911–29 (1976). *See Wehr v. Burroughs Corp.*, 477 F.Supp. 1012, 1022 (E.D.Pa.1979), *aff'd* 619 F.2d 276 (3d Cir. 1980). Plaintiff is not entitled to compensation for travel, hotel, and meal expenses. *Id.*, at 1022; 6 Moore's Federal Practice ¶ 54.77[5.–1]. Moreover, costs will not be awarded for those expenses incurred by plaintiff's attorneys in obtaining depositions, or for those expenses incidental to the preparation of its case. 6 Moore's Federal Practice ¶ 54.77[4] & [8]. Finally, plaintiff is not entitled to recover for the cost of a report prepared by an expert, especially in light of the fact that the report was neither used nor referred to at trial. Id. ¶ 54.77[4]. *See also, Wehr v. Burroughs Corp., supra*, 477 F.Supp. at 1022; *Frigiquip Corp. v. Parker–Hannifin Corp.*, 75 F.R.D. 605 (W.D. Okl.1977).

█ Costs are awarded, in the discretion of the Court, to cover expenses connected with the preparation of transcripts of the proceedings ($1676.00) and depositions ($1058.00); for clerk's fees ($3.00); for use of the Marshall's service ($4.32); and for an additional expense for which liability is conceded by the defendant ($883.42) for a total of $2841.32. Plaintiffs total recovery, therefore, including back pay, liquidated damages, attorneys' fees, and costs is $69,-565.32. The Clerk should enter judgment accordingly.

SO ORDERED.