Marjorie O'DONNELL, Plaintiff,

v.

**GEORGIA OSTEOPATHIC HOSPITAL, INC., d/b/a Doctors Hospital, Defendants.**

Civ. A. No. C81–2188A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 5, 1982.
On Damages July 5, 1983.

Richard L. Stumm, O'Callaghan, Saunders & Stumm, B. Lee Crawford, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for plaintiff.

Martha C. Perrin, Ogletree, Deakins, Nash, Smoak & Stewart, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This action was brought by Marjorie O'Donnell pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). O'Donnell was employed by Georgia Osteopathic Hospital, more commonly known as Doctors Hospital, from 1972 until 1980. She has alleged that while employed by defendant she was demoted on account of her age, denied a promotion for the same reason, and was harassed and constructively discharged when she complained to the Equal Employment Opportunity Commission. O'Donnell seeks back pay, future wages or "front pay" and benefits for the period until she reaches age 65, statutory liquidated damages, and attorneys' fees. The case is presently before the court on plaintiff's motion to strike or for partial

summary judgment on certain affirmative defenses raised in defendant's answer.

DISCUSSION

In its answer, defendant asserted several defenses which are now challenged by O'Donnell's motion. Defendant contended that (1) future damages cannot be recovered under the ADEA, (2) O'Donnell is not entitled to a jury trial on all issues, (3) the discrimination charged in O'Donnell's complaint exceeds the scope of that alleged in the EEOC charge and that the court has no jurisdiction over any acts of discrimination not raised in the EEOC charge, and (4) no recovery can be based on acts occurring prior to the 180 day period preceding the filing of the EEOC charge.

O'Donnell has moved to strike or for partial summary judgment on these four defenses. Although either motion would probably apply to the situation[1] and little practical difference would result by treating it as one kind rather than the other, the court will regard the motion as one to strike since nothing outside the pleadings will be considered. The motion to strike under Rule 12(f) also seems appropriate since it was intended to be the mechanism for disposing of an insufficient defense. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1381, at 790–91 (1969).

The Fifth Circuit has held that an affirmative defense is not valid if it appears to a certainty that the plaintiff would succeed despite any set of facts which could be proved in support of the defense in ques-

tion. *EEOC v. First National Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980).[2] The court also stated, however, that what constitutes an insufficient defense depends on the nature of the claim for relief and the defense in question. *Id.* Here, the main issue, the availability of front pay in an ADEA case, is purely a question of law and the motion to strike will be considered by the court accordingly.

1. Availability of front pay in an ADEA case.

O'Donnell has requested an award of wages from the time of trial until she reaches age 65, now less than four years away. O'Donnell seeks front pay in lieu of reinstatement, contending that reinstatement is not a viable remedy in the circumstances and that she has been and likely will continue to be unable to find other comparable work. The defendant, on the other hand, argues that front pay is not an available remedy in an ADEA case.[3] Thus, the court's task is to determine whether, as a matter of law, front pay is ever recoverable under the Act.

The federal courts have struggled considerably with this issue. Although several circuits have approved awards of front pay under Title VII,[4] these cases would not support a similar award under the ADEA. While Congress patterned the ADEA's substantive provisions after Title VII, the Act's remedial provisions follow those of

---

**1.** Some courts, however, have held that a motion such as the one now before the court cannot be considered under Fed.R.Civ.P. 56(d) as one for partial summary judgment, reasoning that a motion to strike an affirmative defense does not seem to fall within the Rule 56 reference to a motion directed toward "all or any part" of a "claim." *See Krauss v. Keibler-Thompson Corp.*, 72 F.R.D. 615 (D.Del.1976), and authorities cited therein. The *Krauss* decision has been criticized, *see Post v. Textron, Inc.*, 531 F.Supp. 45, 46 n. 1 (W.D.Mich.1981), and other courts and commentators have taken the opposite position. *See id.; Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148, 160 (E.D.Cal.1981); 10 Wright-Miller & Kane, *Federal Practice and Procedure* § 2737, at 679–80 (1973).

**2.** The Eleventh Circuit, in the *en banc* case *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**3.** The defendant's answer stated that "[f]uture damages cannot be recovered under the Age Discrimination in Employment Act." The court interprets this to mean that future damages are recoverable under no circumstances.

**4.** *See, e.g., EEOC v. Safeway Stores*, 634 F.2d 1273, 1281–82 (10th Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2321, 68 L.Ed.2d 844 (1981); *Hill v. Western Elec. Co.*, 596 F.2d 99, 104 (4th Cir.), *cert. denied*, 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979).

the Fair Labor Standards Act.[5] Section 626(b) of the ADEA provides in pertinent part:

> The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this Title [The Fair Labor Standards Act], and subsection (c) of this section.... Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this Title.... In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal and equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section....

The conflicting signals from this language has led to conflicting results in the federal courts. Even the courts who have denied front pay differ on whether the remedy is precluded in all circumstances or only when reinstatement is not sought. The federal court of Maryland concluded in three recent cases that front pay is never recoverable under the ADEA. *See Jaffee v. Plough Broadcasting Co.*, 19 FEP 1194 (D.Md.1979); *Mader v. Control Data Corp.*, 19 FEP 1192 (D.Mar.1978); *Covey v. Robert A. Johnston Co.*, 19 FEP 1188 (D.Md.1977). These courts based their decisions on the grounds that such future damages would be too speculative and would interfere with the congressional policy favoring conciliation of disputes which is embodied in the ADEA.

Other courts have held front pay is unavailable, at least where the plaintiff does not seek reinstatement. In *Wehr v. Burroughs Corp.*, 619 F.2d 276, 283 (3d Cir. 1980), the court held that it would not decide whether future damages may be awarded in an ADEA case because the plaintiff removed the issue from consideration by disclaiming any desire for reinstatement. A similar position seems to have been taken by the court in *Monroe v. Penn-Dixie Corp.*, 335 F.Supp. 231 (N.D. Ga.1971). That court did not indicate whether front pay would be available if reinstatement proved unfeasible, but demonstrated a general reluctance to award front pay.

A few courts, on the other hand, have awarded front pay. Two courts did so without discussion. *See Naton v. Bank of California*, 649 F.2d 691 (9th Cir.1981) (trial court's award of front pay until date of normal retirement not discussed on appeal); *Blim v. Western Electric Co.*, 496 F.Supp. 818 (W.D.Okla.1980). The issue was discussed, however, in *Hoffman v. Nissan Motor Corp.*, 511 F.Supp. 352 (D.N.H. 1981). There, the plaintiff sought reinstatement or alternatively that he be reimbursed at least $20,000 based on the cost of starting a business after he was wrongfully terminated. The court denied reinstatement, stating that it would be a "harbinger of disaster." *Id.* at 355. It noted, however, that the defendant's conduct had placed the plaintiff who was in advanced middle age in a precarious position in the available job market. Since the plaintiff had attempted to find other work and had spent most of his savings starting his own business when he could not find other work, the court found it appropriate to award him $20,000 in lieu of reinstatement.

The courts who have discussed the matter in dicta generally indicate that front pay may be appropriate in certain circumstances.[6] Perhaps the most extensive dis-

---

5. *See* 29 U.S.C. § 626(b) (1976); Note, *Set-Offs Against Back Pay Awards Under the Federal Age Discrimination in Employment Act,* 79 Mich.L. Rev. 1113 (1981).

6. The court can perceive no signal on this matter from *Hedrick v. Hercules, Inc.*, 658 F.2d 1088 (5th Cir.1981), discussed by both parties. Since the trial court approved the offer of reinstatement in that case, it had no occasion to consider an award in lieu thereof.

cussion is offered by the First Circuit in *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir.1979). In remanding the question of a damage award in lieu of reinstatement to the trial court, the court noted that there did not appear to be significant authority for such awards by "equity courts" undoubtedly due to the difficulty of ascertaining future damages. Further, the court stated that where the value of reinstatement is highly speculative, the availability of a substantial liquidated damages award under the ADEA [7] may be a proper consideration in denying front pay.

In *Ginsberg v. Burlington Industries, Inc.*, 500 F.Supp. 696 (S.D.N.Y.1980), after noting these arguments against front pay, nevertheless stated that they are not so overwhelming that one could confidently conclude that a federal court lacked any discretion to grant such an award. The court concluded, however, that a front pay award would be inappropriate under the circumstances, where reinstatement was not genuinely pursued and where evidence that the plaintiff had performed inadequately was substantial. Similarly, in *Robb v. Chemetron Corp.*, 17 FEP 1535 (S.D.Tex.1978), the court noted that there was some authority for a damage award in lieu of reinstatement. It concluded, however, that in light of the award of liquidated damages and the generally improved job situations of the plaintiffs, an award was not necessary to return them to the economic status that they would have held but for their discharge.

The most persuasive discussion of the issue focused on the language of the statute itself. In *Pavlo v. Stiefel Laboratories, Inc.*, 22 FEP 489 (S.D.N.Y.1979), the court considered the availability of compensatory damages. It noted, however, that its reasoning would apply to front pay as well. *Id.* at 494 n. 16. Under the statute the court is empowered to grant "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." Legal relief, it can be argued, incorporates all the remedies traditionally available at common law. Further, a front pay award where reinstatement would not be feasible and where the plaintiff could not find other work would effectuate the purposes of the Act by providing the only way to make the plaintiff whole in the circumstances.

On the other hand, section 626(b) provides that "[a]mounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of the [Fair Labor Standards Act]." As the *Pavlo* court noted, it is clear from the legislative history and the statute itself that Congress intended to incorporate the administrative machinery and enforcement provisions of the FLSA. Since in FLSA cases awards of damages beyond those specified in the statute have been denied, it can be argued that neither compensatory damages nor front pay are recoverable.

This court finds the contrary argument of the *Pavlo* court more persuasive, however. It stated:

> The language of the statute does not support so limited a reading. The provisions of the statute quoted above do nothing more than incorporate by reference the administrative procedures detailed in the FLSA (29 U.S.C. § 216). The legislative history reflects Congress' desire to make use of the FLSA enforcement mechanism already in place rather than to create an entirely new bureaucracy. 113 Cong.Rec. 31254 (Remarks of Sen. Javits, cosponsor of the Senate Bill). Since the FLSA procedures make frequent reference to the payment of "unpaid minimum wages or unpaid overtime compensation," remedies which are clearly inapplicable in age discrimination suits, § 626(b) merely seeks to substitute something more appropriate for those terms. Hence, in reading those sections

---

7. Liquidated damages are available only in cases of willful violations under the ADEA. 29 U.S.C. § 626(b).

of the FLSA incorporated by reference in the ADEA, the words "unpaid minimum wages or unpaid overtime compensation" are to be read "amounts owing to a person as a result of violations of [the ADEA]." The quoted provision tells us nothing about how those "amounts" are to be calculated—only that they are to be determined in accordance with FLSA procedures. *Gifford v. B.D. Diagnostics*, 458 F.Supp. 462, 18 FEP Cases 885 (N.D. Ohio 1978). The only provision which sheds any light on how they are to be calculated tends to support the plaintiff's view: the provision empowering the court to grant such "legal ... relief as may be appropriate."

22 FEP at 493–94.

In the instant case, front pay may prove to be very appropriate. If the plaintiff has genuinely attempted to find other work and can prove that reinstatement would not be feasible, she may be entitled to some amount of future wages. Moreover, the fact that O'Donnell is less than four years away from retirement age would significantly reduce the speculative nature of a front pay award. In any event, the court cannot say at this juncture that front pay would not be recoverable under any circumstances. Thus, the plaintiff's motion to strike this defense is granted to the extent that the defense is that front pay is never recoverable under the ADEA. In other words, the plaintiff will have the opportunity to show that the circumstances warrant such an award.

### 2. Other defenses.

■ The parties' briefs on the other three matters reveal that there are no significant differences among them and they can be disposed of briefly. First, with respect to O'Donnell's right to a jury trial, the law is clear that she is entitled to "a trial by jury of any issue of fact." 29 U.S.C. § 626(c)(2). This includes both wage claims and liquidated damages. *See Goodman v. Heublein, Inc.*, 645 F.2d 127, 129 n. 2 (2d Cir.1981). The plaintiff has conceded that her claims of attorney's fees and costs are for the court. No injunctive relief is sought. Thus, the defense that the plaintiff is not entitled to a jury trial "on all issues" will stand as clarified by the court.

The remaining two defenses concern the acts of discrimination on which O'Donnell may base her claim under the ADEA. The parties' briefs reveal that they agree that three incidents underlie her action: (1) O'Donnell's demotion from secretary to the Director of Medical Affairs to administrative staff secretary in September, 1980; (2) defendant's denial of O'Donnell's request to transfer to secretary to the Hospital Administrator in November, 1980; and (3) O'Donnell's separation from employment with defendant in January, 1981, which she alleges to have been a retaliatory constructive discharge. Further, the parties agree that these three incidents all took place within 180 days of her filing of her charge with the EEOC on November 12, 1980. Thus, the defenses relevant to these matters will stand as clarified.

In sum, the plaintiff's motion to strike is GRANTED on the front pay issue with the qualifications outlined above, and DENIED with respect to the remaining defenses also with the above qualifications.

### ON DAMAGES

This action was brought by Marjorie O'Donnell pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (ADEA). O'Donnell was employed by Georgia Osteopathic Hospital, more commonly known as Doctors Hospital, from 1972 to 1981. Employed as a secretary for most of that time, O'Donnell left the hospital's employ in 1981 at the age of 59. O'Donnell alleged that defendant demoted her because of her age, denied her a promotion for the same reason, and harassed and constructively discharged her when she complained to the Equal Employment Opportunity Commission.

The trial jury, answering special interrogatories, found that the hospital had either discriminated against O'Donnell because of her age or retaliated against her

because she filed a charge of age discrimination with the EEOC. Additionally, the jury found that plaintiff had attempted to mitigate her damages, and that the hospital's violation of the ADEA was willful.

On April 29, 1983, this court denied defendant's motion for judgment notwithstanding the verdict or for a new trial, leaving only the determination of plaintiff's damages. In that connection, the ADEA incorporates the remedies provisions of §§ 16 (except for subsection (a) thereof) and 17 of the Fair Labor Standards Act (FLSA).[1] The ADEA also provides that amounts owing as a result of a violation of the ADEA "shall be deemed to be unpaid minimum wages or unpaid overtime compensation" under the FLSA. 29 U.S.C. § 626(b). Further, the ADEA provides that "liquidated damages shall be payable only in cases of willful violations." *Id.* Liquidated damages are defined as an amount equal to the amount deemed to be unpaid minimum wages or unpaid overtime compensation.[2] Finally, courts are vested with jurisdiction to grant "such legal or equitable relief as may be appropriate to effectuate the purposes of [the Act], including without limitation judgments compelling employment, reinstatement or promotion.... *Id.*

The parties have submitted proposed findings of fact and conclusions of law on damages. The court has reviewed their submissions and makes the following determinations on damages.

## I.  BACK PAY

Unpaid minimum wages, or back pay, has been defined as the difference between the value of compensation, including salary and other benefits, to which plaintiff would be entitled had she remained employed by defendant until the trial date, and the value of her total benefits and earnings at other jobs from her discharge until the trial date. *See Brennan v. Ace Hardware Corp.,* 495

F.2d 368, 373 (8th Cir.1974); *Monroe v. Penn-Dixie Cement Corp.,* 335 F.Supp. 231, 234–35 (N.D.Ga.1971). Although there has been some disagreement between the parties with respect to the proper amount of back pay, their differences are not vast.

The parties agree that at the time O'Donnell left the hospital's employ at the end of January, 1981, she was earning $5.41 per hour. Hospital policy provides for two types of wage increases for employees. The first type is a range adjustment, usually implemented once a year, which is essentially a cost of living increase. The other type of raise is an evaluation raise which may be awarded on an employee's anniversary date if he or she receives a satisfactory evaluation. Plaintiff received each type of raise each of the last two years of her employment with defendant (1979 and 1980), and apparently received merit increases every other year of her employment back to 1973, some of these sizable.

The court believes that it is reasonable to assume that had plaintiff remained employed with defendant through the date of trial, January 17, 1983, that she would have received both types of increases in 1981 and 1982 and that the raises would be at least equal to those received in her last year of employment. These raises were three per cent for cost of living, and five per cent for performance.

Defendant's computations reflect only three projected raises for 1981 and 1982, without specifying the type. There is no explanation why one of the raises would be denied. There is no reason to believe that plaintiff would not have received one of the performance raises in 1981 or 1982 but for the violation. All of plaintiff's performance evaluations were very favorable. The last evaluation, completed by Executive Director Jack Sartain, states only that plaintiff's "work is reported to be 'good'." The evidence as a whole established that plain-

---

1. The FLSA sections are 29 U.S.C. §§ 216 and 217. Section 16(b) of the FLSA authorizes a private suit for unpaid wages plus an equal amount of liquidated damages. The other in-

corporated sections authorize suits by the EEOC, irrelevant for purposes of this case.

2. 29 U.S.C. § 216(b).

tiff's skills as a secretary were well above average.

Consequently, accepting plaintiff's method of calculation but not her addition, the court finds that plaintiff's earnings from January 31, 1981, to January 17, 1983 would have been $24,507.44. Plaintiff's records show her actual interim earnings for the period January 31, 1981, to January 17, 1983, to be $5,515.74. This figure is well documented and the court accepts it.[3] The amount of back pay is therefore $18,991.70.

■ Defendant argues that plaintiff is entitled to virtually no back pay because it contends that it made an offer of reinstatement which plaintiff rejected, allegedly cutting off defendant's liability for back pay. First, it is not clear that an offer of reinstatement was actually made. In any event, an offer of reinstatement could not operate to cut off defendant's responsibility for back pay in the circumstances of this case.

The statute makes it clear that reinstatement is not a mandatory remedy, but is within the trial court's discretion to grant or deny, 29 U.S.C. § 626(b), and the courts have agreed. *Hedrick v. Hercules*, 658 F.2d 1088, 1095 (5th Cir., Unit B 1981); *Ginsberg v. Burlington Industries*, 500 F.Supp. 696, 699 (S.D.N.Y.1978); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841, 846–47 (W.D.Okla.1976). The cases cited by defendant do not support its argument that rejection of an offer of reinstatement ends the employer's liability for back pay,[4] with the exception of *Monroe, supra.*

The *Monroe* court indicated that a failure to request or rejection of reinstatement cuts off liability for back pay. This court rejects this position. It ignores the possibility that reinstatement may not be feasible due to the circumstances surrounding an employee's discharge. The present case is an example of such a fact situation. O'Donnell offered ample evidence of the deterioration of her working conditions in her last months of employment. Her desk was moved to face the wall and she was left with nothing to do for a large part of the day. There was evidence that plaintiff was harassed and shunned by the hospital supervisory personnel, particularly after it was learned that plaintiff had filed a charge of discrimination with the EEOC. These ill feelings have undoubtedly been exacerbated by this litigation. Since reinstatement is not appropriate in this case, O'Donnell's failure to request it is irrelevant, and defendant's back pay liability was not cut off by any offer it might have made.

**3.** Plaintiff first stated this figure to be $6,800.05. This figure was calculated through May 15, 1983. In its order to the parties directing them to submit additional documentation on back pay, the court instructed the parties to use the date of trial, January 17, 1983, for purposes of computing back pay. Accordingly, plaintiff reduced her computation to $5,515.74.

A reasonable, good faith effort to mitigate losses is of course essential to plaintiff's recovery of back pay. *Merriweather v. Hercules, Inc.*, 631 F.2d 1161 (5th Cir.1980). The jury found that plaintiff had made such an effort and this court found that the evidence sufficiently supported this finding. *See* Order of April 29, 1983.

**4.** *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), did not involve the ADEA or reinstatement, but an offer of a job previously denied. There was no question concerning the propriety of plaintiff working at Ford. The question was rather whether an unconditional offer of a job previously denied tolled back pay liability or if the employer was required to offer seniority retroactive to the date of the alleged discrimination to toll back pay liability. The ruling that an unconditional offer of a job tolled liability was based simply on the mitigation requirement. The jury found that O'Donnell mitigated her damages. The court will not rule that the mitigation requirement means that plaintiff must accept an offer of reinstatement, when it would be inappropriate and unworkable. *See infra.*

*Allen v. Autauga County Board of Education*, 685 F.2d 1302 (11th Cir.1982), involved two teachers whose contracts were not renewed because they exercised their First Amendment rights. After finding the school board's action illegal, the court ruled that reinstatement was required in spite of the existence of an antagonistic relationship. The crucial difference between *Allen* and the case at hand is that the *Allen* plaintiffs sought reinstatement, whereas O'Donnell does not. Refusal to order reinstatement where it is sought and where First Amendment rights are involved would be to leave the violation unremedied.

## II. FRONT PAY

■ O'Donnell seeks front pay or future wages from defendant. In the November 5, 1982 order of this court, the cases on the availability of front pay in an ADEA case were analyzed. The court concluded that the statute does not foreclose an award of front pay. Rather, the court stated that front pay may be awarded if the plaintiff has genuinely but unsuccessfully attempted to find other work and if reinstatement would not be feasible.[5] The court has just discussed the latter requirement, concluding that reinstatement would not be appropriate in this case.

O'Donnell has also shown the existence of the other requirement—that she has diligently sought substitute work, but has been unsuccessful in doing so. At trial, plaintiff produced evidence that she contacted a number of prospective employers from the time of her resignation in January, 1981, to at least the summer of 1982. In the time since plaintiff left the hospital, she has worked a variety of temporary secretarial and clerical jobs through referrals from temporary placement agencies. None of these part-time employers have offered plaintiff full-time employment. The jury concluded that O'Donnell had reasonably attempted to find substitute work, a conclusion which this court found supported by substantial evidence. In view of plaintiff's continued ability to work and the reality of little likelihood of reemployment at plaintiff's current age of 61, the court finds an award of front pay appropriate.

The court has computed plaintiff's future wages by starting with what her wage per hour would have been at the date of trial, January 17, 1983, the cut off point for back pay. From there the court found total salary for 1983, 1984, 1985, and 1986, adding a raise equal to that plaintiff received in her last year of employment, eight per cent, for each of these years. The court deducted an amount for the portion of 1983 included in the back pay award, and an amount for the year 1986, after plaintiff's expected retirement around the first of August. These calculations yielded a figure of $51,577.29.[6]

From this future wages figure, the court subtracted plaintiff's reasonable expected earnings from January 17, 1983 to August, 1986. Plaintiff earned an average of $229.82 per month from the time she left defendant's employ until the date of trial. Using this figure, plaintiff would have earned $9,652.44 from the date of trial until her retirement. Subtracting this figure from the future wages figure yields a total of $41,924.85.[7] Discounted to present value at a rate of interest of five per cent results in a net award of $35,343.45 for front pay.

## III. LIQUIDATED DAMAGES

■ Liquidated damages are payable for "willful violations" of the ADEA. 29 U.S.C. § 626(b). The jury found that the hospital's violation of the ADEA was willful, that the hospital was aware that its

---

5. Since the court's order of November 5, 1982, at least one court has reached the same result with respect to front pay. In *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161 (S.D.N.Y. 1983), the court awarded front pay, holding specifically that the failure to request reinstatement does not bar an award of front pay (nor, necessarily, an award of back pay) because that remedy may be inappropriate under the circumstances.

6. $6.32/hr. X 40 hours = $252.80/wk.
$252.80/wk X 52 weeks = $13,145.60 (salary for 1983)
$13,145.60 X .08 = $1,051.65 + 13,145.60 = $14,197.25 (salary for 1984)
$14,197.25 X .08 = $1,135.78 + 14,197.25 = $15,333.03 (salary for 1985)
$15,333.03 X .08 = $1,226.64 + 15,333.03 = $16,559.67 (salary for 1986)

$13,145.60 − ($252.80 X 3) = $12,387.20 (adjusted salary for 1983)
$16,559.67 X 7/12 = $9,659.81 (adjusted salary for 1986)

| 1983 | – | $12,387.20 |
|------|---|------------|
| 1984 | – | 14,197.25 |
| 1985 | – | 15,333.03 |
| 1986 | – | 9,659.81 |

$51,577.29 (total future wages)

7. $229.82/month X 42 months = $9,652.44 (earnings for January 17, 1983 – August, 1986)

$51,577.29
− 9,652.44
$41,924.85 (Net future wages)

actions were subject to the Act. *See Hedrick v. Hercules Inc.*, 658 F.2d 1088, 1096 (5th Cir., Unit B 1981). The court found this finding supported by substantial evidence. However, liquidated damages are not automatically payable upon a finding of a willful violation. The trial court must consider evidence of the employer's good faith in determining whether to award liquidated damages. *Id.* at 1095–96.

■ Defendant primarily relies on its presentation of non-discriminatory business reasons for its action and its offers of reinstatement as evidence of its good faith. However, the jury found that the non-discriminatory reasons asserted by defendant were pretextual, and the court found this conclusion supported by substantial evidence. Indeed, although defendant contended that plaintiff's performance was not up to par, the evidence revealed plaintiff's favorable performance evaluations and that none of plaintiff's critics ever discussed her problems with her or otherwise indicated dissatisfaction.

Moreover, the testimony of Neysa Sharpless, the 34 year old woman who replaced plaintiff in one of the jobs in question, is evidence of bad faith on the part of the hospital. Sharpless stated that Executive Director Sartain informed plaintiff's former boss, Dr. Harkness, that "he (Sartain) would personally take care of getting rid of [plaintiff]." Sharpless also testified that Harkness told her that she "fit his need as a secretary perfectly" by being young, attractive, and personable.

Finally, the court finds that defendant's offers of reinstatement are not sufficient evidence of good faith so as to preclude an award of liquidated damages. Defendant contends that several offers were made. The court, however, finds that these offers were not bona fide in view of the strong evidence of discrimination and the hostile working conditions plaintiff endured in her final months. Nor does the offer of reinstatement to a department other than administration persuade the court of defendant's sincerity since it is not clear where else plaintiff with her secretarial skills could work. In any event, since plaintiff's complaints involved top hospital officials, it is not likely that working in another department would remove the hostility and ill feelings.

■ Plaintiff seeks liquidated damages in an amount equal to the award of back pay ($18,991.70) plus the award of front pay ($35,343.45), or $54,335.15. The court believes that only back pay should be used to calculate liquidated damages. Liquidated damages are defined as an amount equal to the amount deemed to be unpaid minimum wages or unpaid overtime compensation. 29 U.S.C. § 216(b). Liquidated damages "typically are an amount equal to the back pay and lost benefits due a prevailing plaintiff." 2 H. Eglit and M. Malin, *Age Discrimination* § 18.14 (1982). Moreover, front pay is a remedy to be granted in place of reinstatement, where it is not appropriate. The reinstatement remedy is converted to monetary terms only in special circumstances, and this monetary award should not be considered in determining liquidated damages. Therefore, the liquidated damage award is the same amount as the back pay award, $18,991.70.

## IV.  PREJUDGMENT INTEREST

■ Finally, plaintiff seeks prejudgment interest on the back pay award. In *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149, 162 (7th Cir.1981), in an ADEA case, the court held that an award of prejudgment interest lies within the trial court's discretion. The court finds that such an award is warranted here in view of the strong evidence of discrimination, the jury's finding of willfulness, and its finding that plaintiff had reasonably attempted to mitigate her damages. The court finds plaintiff is entitled to prejudgment interest in the amount of six per cent of the back pay award, or $1,139.50.

In sum, the court finds that O'Donnell is entitled to damages of $74,466.35. The clerk is directed to enter judgment for plaintiff in that amount.