Mark **WILDMAN**, Plaintiff,

v.

**LERNER STORES CORPORATION,**
**Lerner Shops International Inc.,**
**Defendants.**

**Civ. No. 81–2464 (JP).**

United States District Court,
D. Puerto Rico.

Feb. 17, 1984.

Harvey B. Nachman, Santurce, P.R., Antonio Moreda, Hato Rey, P.R., for plaintiff.

Vicente Antonetti, Goldman, Antonetti & Davila, Santurce, P.R., for defendants Lerner Stores Corp. and Lerner Shops Intern., Inc.

## OPINION AND ORDER

PIERAS, District Judge.

### I.  INTRODUCTION:

This is an action by an employee, Mark Wildman, alleging that he was fired because of his age, all in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621–634, and the Puerto Rico Discrimination Law, 29 L.P.R.A. Sec. 146.  The parties, in several Pre-trial Conferences and in a hearing before Trial, discussed the proper charge for the Jury pertaining to the burden of proof and the applicable standard of damages to be awarded in lieu of reinstatement under both federal and state law.  The Court, in planning ahead the evidence to be admitted during the Trial, as well as the cause of the proceeding, enters this Opinion containing all rulings as to the interpretation of the laws which are applicable.

### II.  STATEMENT OF FACTS:

The parties have agreed on the following facts:

1.  Plaintiff Mark Wildman worked for defendant Lerner Stores for 22 years as General Manager of operations in Puerto Rico.

2.  The plaintiff alleges that he was discharged on October 29, 1981 for reason of his age, which was then 61½ years.  The defendant employer contends that he was discharged for good cause and not for the reason of his age.

3.  The plaintiff alleges the following damages: (A) use of an automobile and the payment of expenses in relation with such use;  (B) bonuses contingent on the profit of Lerner Stores nationally;  (C) Group Life Insurance equal to 1.125% of his annual earnings;  (D) health insurance, cost to the defendant $944.00 per year;  (E) pension plan—plaintiff could accumulate credit services up to age 65.  He was dismissed when he was 61 and a half years old.  The pension plan provided an option and the plaintiff exercised his option upon discharge.  The following is the present status of the pension:

(i) Plaintiff's total pension at age 65 . . . . . . . . $165,224.00

(ii) Plaintiff received a lump sum based upon credited services accumulated after 22 years of services in the sum of . . . . . . . . . . . . . . $107,860.00

(F) an expense account not subject to proof invariable of $150.00 per month;  and (G) salary of $60,000.00 a year.

### III.  THE LOEB STANDARD—BURDEN:

Our Circuit Court in *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1979), analyzed the Supreme Court Decision in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  The *McDonnell Douglas* case dealt with race discrimination in hiring under Title VII of the Civil Rights Acts and the *Loeb* case came under ADEA dealing with a case similar to the one at bar—Age Discrimination.  The *Loeb* decision accommodates the general principles annunciated in the *McDonnell* case to the circumstances surrounding an age discrimination case to be tried before a jury.

Drawing from these sources, and pertaining to the burden which the parties have in this kind of case, the Circuit Court holds that the plaintiff has the burden of establishing a *prima facie case* which requires that he proves: (a) that he was in the protected age group; (b) that he was performing his job at a level which met his employer's legitimate expectation; (c) that he, nevertheless, was fired; and (d) that the employer sought someone to perform the same work after he left.  If the plaintiff establishes a prima facie case, then the

defendant must counter with a *burden of production*, rather than a burden of persuasion. This means that defendant has the "burden to articulate or state a valid reason for such discharge". Said burden includes the employer's defense which must be designed to meet the prima facie case made by the plaintiff and must be sufficient on its face to rebut or dispel the inference of discrimination that arises from proof of the prima facie case. *International Brotherhood of Teamsters v. U.S.,* 431 U.S. 324, 360 n. 46, also at 342 n. 23, 97 S.Ct. 1843, 1867, 52 L.Ed.2d 396 (1977); *McDonnell Douglas,* 411 U.S. at 807, 93 S.Ct. at 1826.

■ If the defendant discharges its burden of production, then the plaintiff "must show that the reason so articulated or stated is a mere pretext or 'cover up' for what was in truth a discriminatory purpose", i.e., "that the defendant's action was not based on the reason given". *Loeb,* at 1012.

■ We must emphasize that the burden of persuasion is at all times with the plaintiff.

## IV. DAMAGES:

■ The plaintiff, in addition to his damages pertaining to "unpaid wages", which include the fringes stated hereinbefore, claims in lieu of reinstatement future wages computed *post* date of judgment. The Court must decide whether the plaintiff is entitled to future loss of wages and damages.

In the seminal case of *Loeb v. Textron, Inc., supra,* Judge Campbell stated, at page 1023: "Assuming, *without in any way deciding,* that a monetary award may be made in lieu of reinstatement, we suspect that both continuing payments and substantial awards calculated, for example, on the basis of life expectancy, would be inappropriate. For the time being, however, we leave all these questions open for initial consideration by the District Court, if they surface again after a new trial". The Circuit Court in that same decision, in discussing the possibility of appraising and allowing such damages, realizes the impossibility of appraising them upon any workable unspeculative and unarbitrary basis. The Circuit Court, in analyzing the award of the lower court awarding damages after the date of judgment with gradually decreasing yearly payments totalling $90,000.00 until age 70, found nothing in the record to anchor the amounts that the court arrived at to be paid each year. *Loeb* case, at page 1021 (Footnote 29).[1]

The *Loeb* Court discusses some of the language found in the case of *Robert De Mario Jewelry,* 361 U.S. 288, at 291, 80 S.Ct. 332, at 335, 4 L.Ed.2d 323, which covers the Court's inherent equitable powers. "The Supreme Court's endorsement of broad equitable relief in that case must be taken with caution; however, the Court has never been confronted with the issue of damages in lieu of reinstatement and, undoubtedly because of the difficulty of ascertaining future damages, there does not appear to be significant authority for such awards by 'equity courts', ..." *Loeb,* at 1023. The *Loeb* Court also states that there are additional reasons why future earnings should not be awarded: "First, payments in lieu of reinstatement are payments for services not rendered. Second, any assessment of what an individual might have earned had he been reinstated usually is highly speculative, given the possibilities of promotions or legitimate demotions or terminations." *Id.* Also, we must note as the *Loeb* Court analyzed the *McDonnell Douglas* decision, that there are factors of advancing age, such as de-

1. "29. These payments would have extended over twelve years, and were conditioned on plaintiff's survival and Textron's continuing in business. We find nothing in the record to anchor the amounts that the Court arrived at to be paid each year. Plaintiff's expert witness, Professor Rohr, testified that were plaintiff reinstated, he could reasonably expect to receive a total of $526,892 in total compensation, including salary, bonuses and stock savings contributions. The District court did not explain the basis for the figures it used and we do not know how it arrived at them. The total of $90,000.00 has no relation to the testimony of Professor Rohr or to the discounted value of his estimates".

clining health or diminished vigor and competence which are sufficient cause for dismissal without violating the age discrimination statute. Wherefore, an award for future earnings would be entirely arbitrary and speculative. Also, the 1st Circuit in the case of *Kolb v. Goldring, Inc.*, 694 F.2d 869 (1982), sets the trend of awarding damages to date of judgment, but no damages for future earnings in lieu of reinstatement.[2] *Kolb v. Goldring, supra,* Footnote 4, at page 874.

In the case at bar, given the age of the plaintiff, it would be speculative to estimate future earnings after judgment and it would just be mere guess work to try. Under these circumstances, we refuse to believe that congress intended to award damages after date of judgment. We must conclude that damages have a cut off date as of the time of the judgment. Let's examine the statute.

The pertinent provisions of the age discrimination in Employment Act reads as follows:

"(b) The provision of this Chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this Title, and subsection (c) of this section. Any act prohibited under Section 623 of this Title shall be deemed to be a prohibited Act under Section 215 of this Title. Amounts owing to a person as a result of a violation of this Chapter shall be deemed to be unpaid *minimum wages* or *unpaid overtime compensation* for purposes of Section 216 and 217 of this Title: Provided, that liquidated damages shall be payable only in cases of willful violations of this Chapter. In any action brought to enforce this Chapter, the Court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this Chapter, including without limitation, judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this Section."

Congress has clearly created a cause of action where there was none at common law. It is a creation of Congress, and Congress also has a right to limit and regulate. In this particular enactment, Congress specifically limited the monetary damages to unpaid wages which the discriminatee was entitled to. Clearly *unpaid* wages mean those which were *unpaid* as of the date of judgment. Wages could not have been unpaid following the date of judgment. This coupled with the fact that Congress is silent as to future damages and that a determination of future damages is highly speculative as discussed before, reaffirms our opinion that Congress intended only past wages to date of judgment. This clear language is devoid of any congressional intent to cover, in addition to providing liquidated damages, future possible earnings past judgment. When in the next paragraph the law states: "The Court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purpose of the Chapter", the law is not referring to money awards which obviously was dealt with before. This provision of the statute is dealing with the question of reinstatement and the powers of the Court to execute its judgment enforcing the same as to reinstatement, money award and liquidated damages.

## V. A. STATE LAW CLAIM:

The Puerto Rico Discrimination Law is found in Title 29 of L.P.R.A. Sec. 146, which reads as follows:

---

**2.** "4. Had Kolb's Goldring income been as high as he suggests (approximately $39,000 per year), Kolb would still have not regained his former economic status by the date of judgment. The proper period would then have been from the date of termination to the date of judgment. In such circumstances, of course, damages are "settled" on the date of judgment and the plaintiff cannot then recover damages for future economic loss, or "front pay", even though the injury continues. See *Wehr v. Burroughs*, 619 F.2d 276, 283 (3rd Cir.1980) (no future damages where the plaintiff did not seek reinstatement); *Monroe v. Penn-Dixie Cement Corp.*, 335 F.Supp. 231, 235 (N.D.Ga.1971).

"146. Discrimination for Age, Race, Color, Creed, Sex, Birth or social position.

Any employer who discharges, lays off or discriminates against an employee regarding his salary wage, pay or remuneration, terms, rank, conditions, or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employees in any manner which tends to deprive a person of employment opportunities, or affect his status as employee, on the basis of age, as defined hereinafter, race, color, sex, origin or social position, political affiliation, or religious beliefs of the employee or applicant for employment: (a) shall incur civil liability (1) for a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action; (2) or for a sum of not less than one hundred (100) nor more than one thousand (1,000) dollars, in the discretion of the court, if no pecuniary damages are determined; (3) or twice the amount of the damages sustained, if such amount is under the sum of one hundred dollars; and (b) he shall, also, be guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than one hundred (100) dollars nor more than five hundred (500) dollars, or by imprisonment in jail for a term of not less than thirty (30) nor more than ninety (90) days, or by both penalties, in the discretion of the Court. In the judgment passed on civil actions brought under the preceding provisions, the court may direct the employer to reinstate the employee in his former job, and to cease and desist from such action."

■ Plaintiff's attorney alleges that under this law, there is a right to be compensated for the following:

1. Past wages from date of discharge to date of judgment.

2. Future wages, less mitigation, to age 65.

3. Pain and suffering suffered by reason of the discharge based on the allega-

tion that the action under this statute is one in tort.

4. Twice the damages suffered by the mere reason of the verdict.

We add that the statute provides for reinstatement as a remedy left to the discretion of the Court.

The Court finds that the law provides as remedies only one (1) and four (4) above, but not two (2) and three (3). Future wages are obviously not a remedy provided by the statute for the same reasons hereinbefore stated under ADEA. Plaintiff alleges that the cause of action created by the statute is a tort and, therefore, he should receive all damages ensuing from the tortious act recognized at common law, here in Puerto Rico under Section 1802 of the Civil Code. If successful, this would amount to about four times the past wages due plaintiff. We do not agree. This statute creates a cause of action where there was none. The legislators had a right to limit the remedies and that is precisely what they did. The remedy was limited as appears from the statute hereinbefore cited to a sum equal to twice the amount of the damages sustained. The damages it refers to are the past wages not paid to plaintiff because of his discharge and up to the time of judgment; all other damages would be highly speculative. The law refers to damages in the past not in the future. If the legislator had in mind future earnings, they should have so stated. We cannot go beyond the clear language of the statute. This is particularly so when in the interpretation urged by plaintiff, the result would clearly be an unjust enrichment and not remedial in its nature.

Furthermore, the case cited by plaintiff, *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740, to sustain the proposition that the law in question creates a tort action is not in point and cannot be the basis to sustain such a conclusion. In that case, the Supreme Court of Puerto Rico decided that the statute of limitation that applies for actions under this law, is the one year period provided in 31 L.P.R.A.

5298, which is used for torts actions. The Court makes the blanket statement that civil right actions are considered tort actions. The Court does not extend said concept to the remedial aspect of a statute creating a cause of action and providing remedies thereon. This is said only for the purpose of determining the statute of limitation, but not for the purpose of extending general tort remedies of this law. In the case of *Marina Industrial, Inc. v. Brown Boveri Corporation*, 83 J.T.S. 31 (—— D.P.R. —— 1983) decided March 18, 1983, the Supreme Court refers to a similar statute creating a cause of action [Law 75-10 L.P.R.A. 278 et seq.—the rights of distribution as against manufacturers] and providing remedies pursuant thereto. Although it decided that the statute created a tort action, the Court ruled that the general remedies under torts generally conceived under Art. 1802 (which may be translated as remedies at common law) are not applicable and should be restricted to one or all of the enumerated remedies provided in that law.

Therefore, the remedies under the state statutes are—money damages to time of judgment (twice in case plaintiff is successful) and the evidence will be restricted accordingly.

### B. *BURDEN:*

Plaintiff's burden to make a prima facie case requires proof that he falls within the protected age group and that he was discharged. Defendant's burden requires them to prove that the motive for the discharge was not discriminatory and this must be shown by a preponderance of the evidence. The difference between the State Law 100 and the ADEA is that the defendant's burden under ADEA is a burden to produce evidence showing that it was not discriminatory. In this sense, under the State Law, defendant's burden is of a greater caliber of proof. *Naty Ibañez v. Molinos de Puerto Rico*, 83 J.T.S. 30, decided March 16, 1983. The Supreme Court of Puerto Rico in *Ibañez* reversed the lower court for mistakingly "collating" the

burden and weighing the evidence in an action under ADEA and an action under the Law 100, since the effect of the presumption which the plaintiff has at his disposal is different. Under local law, "it suffices if the defendant proves even through circumstantial evidence that the motive for the discharge was not discriminatory. This last point should be established through the preponderance of the evidence which reflect a greater quantum of proof than that required by the federal jurisdiction." *Ibañez*, (translation) at 12. Nonetheless, with regard to the remedies available under ADEA and Law 100, the parallelism is clear, "since under both statutes the same result could be obtained". *Ibañez*, (translation) at 13. The remedy provided by the local law is in conformity with ADEA remedy; this is evident from the doubling of the amounts and even in the legislative recognition of the trial judge's discretion in ordering reinstatement of the employee if necessary. Thus, the main difference between the local law and ADEA is in the fact that plaintiff has an easier burden under the local law and "in that sense, the local legislation is more favorable to plaintiff than its federal counterpart." *Ibañez*, (translation) at 13. This is the holding of the Puerto Rico Supreme Court in *Ibañez*, the different burdens which the legislature has placed. However, the local legislature has provided the local plaintiff with the same remedies as his federal counterpart and it is precisely this parallelism in remedies which excludes a cause of action for future earnings past judgment date and a cause of action for pain and suffering.

### VI. *JURY AND JUDGE FUNCTIONS:*

The parties agree that the jury is to determine whether plaintiff was discharged because of age. If so, then the jury makes the determination of back pay and then whether the defendant was willful in his discrimination. The judge determines whether or not plaintiff should be reinstated. If the jury finds willfullness, then the trial judge adds the liquidated damages which is an amount equal to the jury find-

ing of unpaid wages. Other issues for the jury are read to them through instructions from the bench.

With reference to the *Loeb* decision and to the necessary caution which the trial judge must take in not confusing the jury, the framers of the constitution did not take this into account when deciding on the right to have all matters judged by their own peers, regardless of what matter. Were they right? We go along with the guidance in the *Loeb* decision that the explanation of the differences in burden of proof should be handled in such a manner as not to confuse the jury.

The truth is that we do not have a way to keep from the jury the secret of the burdens of the parties—because we are dealing here with two statutes and with two different burdens. Can the Court hold a separate trial? It is our opinion that the Court can. Is it practical? No, it is not practical and burdensome for the parties.

For the sake of judicial economy, practicality and above all justice, we must try this case in one single trial and before the same jury. This means that the difference between one statute and the other must be explained to the jury and the Court will proceed as such in its charge to the jury.

Chief Justice Warren Burger recently stated that the legal profession is low in public esteem and identified the cause among others as too many "absurd" law suits and too much "abuse" of the legal process. Not all the blame reposes on practicing attorneys, but in the legal establishment as a whole, including judges who are at times willing to thwart the clearly written law and the logical intention of the legislators to write their own law and enact their own theories or remedies. The present case may be one in point as the plaintiff urges the Court to interpret the state law outside of its clear wording and award the claimant an estimated four times his actual present losses plus attorney's fees. We cannot blame the lawyers, they owe it to their clients to get the most for them. As long as there are judges that go along with these theories which have no

relation to the legislator's intention which is to cure injustices by creating remedial legislation, law suits become lotteries. Such theories create total uncertainty as to the measure of damages and juries have no other alternative than to act arbitrarily. In the case at bar, the announced expert witnesses include doctors specializing in Internal Medicine and Psychiatry. Cases of age discrimination will end up like so many accident cases, like a theatre where the main actors are the doctors and economic experts who all contribute their special and divergent theories as well as different results as to the type and cause of illness, the ensuing pain and suffering, and the amount of future earnings. The Supreme Court of Puerto Rico has particularly advocated restraint and caution in the consideration of this evidence; especially in cases which fall outside a traditional or classical tort.

Accordingly, the Court concludes as follows:

CONCLUSIONS:

1. The Court reserves the right under its equitable remedies to hear the evidence and then decide on the appropriateness of reinstatement.

2. Should plaintiff prevail, he is entitled to damages for unpaid wages until the date of judgment. Plaintiff will not be entitled to future wages and pain and suffering.

3. The issue of willfullness will be for the jury, through an instruction. Should the jury find willfullness, then the liquidated amount will be computed, which will be the same amount as the amount for compensatory damages.

4. The jury will receive instructions as to the federal and the state standards as the trial will not be bifurcated on those issues.

IT IS SO ORDERED.